## JONES v. MOORE, State Treasurer of Delaware.

(District Court, D. Delaware. March 18, 1912.)

No. 6.

**1. RECEIVERS (§ 173*)—LEAVE TO SUE—EFFECT.**

That a receiver of a railroad company was authorized by the court to sue the State Treasurer at law or in equity to recover assets of the railroad company in his custody was not a final determination by the court in advance of the jurisdictional validity, propriety, or legality of any particular proceeding at law or in equity which might be instituted in consequence of such authority.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 327–332; Dec. Dig. § 173.*

Actions by or against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.]

**2. ASSUMPSIT, ACTION OF (§ 4*)—RIGHT TO SUE.**

Assumpsit lies only to recover damages for breach of a parol contract, and to sustain it it must appear that there was a valid contract, express or implied, on the part of the defendant and a breach by him.

[Ed. Note.—For other cases, see Assumpsit, Action of, Cent. Dig. § 13; Dec. Dig. § 4.*]

**3. CORPORATIONS (§ 20*) — ORGANIZATION — FUNDS — DEPOSIT WITH STATE TREASURER—RECOVERY.**

Delaware General Corporation Law (22 Del. Laws, c. 394) § 108, provides for the filing of articles of association of railroad corporations organized in that state with the Secretary of State only after $500 of stock for every mile proposed to be constructed is subscribed and paid in in good faith to the directors, who shall have deposited such sum with the State Treasurer, to be repaid to the directors or treasurer of the railroad in sums of $500 for each mile constructed, etc. Section 117 declares that any corporation created under the act to construct a railway shall commence its proposed construction within six months from organization, and shall complete at least one track within two years from the date of its commencement, provided that, if it fails to do so, it shall forfeit the franchises given by the act. *Held,* that where a railroad company and its predecessor had each deposited $7,000 with the State Treasurer under such act, and, after consolidation, the latter company forfeited its franchise, and was dissolved for failure to construct any part of its road, the treasurer's obligation to repay the money so deposited did not arise out of contract, and therefore assumpsit would not lie to recover the same.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 27; Dec. Dig. § 20.*]

At Law. Action by William G. Jones, Jr., as receiver of the Delaware Interurban Railway Company, against David O. Moore, Delaware State Treasurer. On demurrer to declaration. Sustained in part, and overruled in part.

David J. Reinhardt, of Wilmington, Del., and Reynolds D. Brown, of Philadelphia, Pa., for plaintiff.

Andrew C. Gray, Atty. Gen., and Josiah O. Wolcott, Deputy Atty. Gen., both of Wilmington, Del., for defendant.

BRADFORD, District Judge. This case is an action of assumpsit brought by William G. Jones, Junior, receiver of Delaware Interurban

Railway Company, a corporation of Delaware, hereinafter referred to as the interurban company, against David O. Moore, treasurer of the state of Delaware. The declaration contains four counts, each of which has been demurred to generally. It is unnecessary to set forth in detail the allegations of the several counts; and only such of the facts, admitted by the demurrer, will be referred to as raise material points in the case. The Delaware Suburban Railway Company, hereinafter referred to as the suburban company, having been incorporated and organized under the general corporation law of Delaware (Vol. 22, Chap. 394, Del. Laws) for the purpose of constructing, maintaining and operating a line of railway for the transportation of freight and passengers by any improved motive power other than steam, in the city of Wilmington, in New Castle county and state of Delaware, the directors of that company caused to be deposited October 13, 1902, and May 19, 1903, with Martin B. Burris, then state treasurer of Delaware, moneys aggregating $7,000, under and pursuant to the provisions of section 108 of the general corporation law. The $7,000 so deposited was received by the company from subscribers to its capital stock. At the expiration of the official term of Burris as state treasurer, he paid and transferred the $7,000 so deposited to Thomas N. Rawlins, his successor in the office of state treasurer. Afterwards, and prior to March 9, 1905, the interurban company was incorporated and organized under the general corporation law with powers similar to those which had been conferred upon the suburban company, and the directors of the interurban company caused to be deposited on the last mentioned day $7,000 with Rawlins, state treasurer, as custodian thereof, under and pursuant to the provisions of the same section of the general corporation law. This sum of $7,000 had been received by the interurban company from subscribers to its capital stock. Afterwards, May 31, 1905, under and by virtue of the provisions of sections 59 and 60 of the general corporation law the suburban company was merged and consolidated with the interurban company, the latter company thereupon succeeding to all the rights, privileges, powers, franchises, property and debts of the suburban company. Owing to financial inability on the part of the interurban company the proposed railway was never constructed, and under and pursuant to the provisions of section 117 of the general corporation law its franchises were forfeited October 1, 1907, and under and pursuant to the provisions of sections 39, 40, 41 and 42 of the same law it was, March 1, 1910, duly dissolved and its corporate existence ended, rendering impossible the construction of the proposed railway by the interurban company. The sum of $14,000, being the aggregate of the two sums of $7,000 paid to the state treasurer by the directors of the suburban and interurban companies respectively, remained in the custody of Rawlins, state treasurer, until paid by him January 5, 1909, to Moore, his successor in that office, the defendant, who has since held and now holds and is in possession of the same. Certain interest on the $14,000 has been received by the state treasurer during the time the principal

sum has been in his custody and possession. The plaintiff was appointed receiver of the interurban company by the circuit court of the United States for the district of Delaware and qualified in August, 1909, and has ever since remained such receiver. He made demand of the defendant for the payment to him of the above mentioned sum of $14,000, together with the interest accrued thereon, with which demand the defendant refused to comply. The plaintiff was authorized by the circuit court, now the district court, June 17, 1910, to institute proceedings for the recovery of such assets of the interurban company as theretofore or then were in the custody and possession of the state treasurer. There are sundry other allegations of fact, and allegations of law in the guise of facts, as well as allegations of mere matter of law which hereinafter will be referred to. Section 106 of the general corporation law provides for the formation of corporations such as the suburban and interurban companies, and requires that the articles of association shall set forth, among other things, the "estimated length of such railway" and the amount of the capital stock which "shall not be less than two thousand dollars for every mile of road proposed to be constructed." Section 107 relates to the approval and filing of the articles of association, and to certain "additional powers" not material to be considered in this connection. Section 108 is as follows:

"Section 108. Articles of association, in compliance with the provisions of sections 106 and 107 of this Act as amended shall not be filed and recorded in the office of the Secretary of State until at least five hundred dollars of stock for every mile of railway proposed to be made is subscribed thereto and paid, in good faith and in cash, to the directors named in said articles of association, nor until the directors shall have deposited the said moneys so subscribed and paid to them with the State Treasurer, who is constituted the custodian of the same, and shall hold the same, subject to be repaid to the directors of the said corporation, or to the treasurer thereof, in sums of five hundred dollars for each mile of said railway, upon the construction of which it shall be proved, to his satisfaction, that the said corporation has expended at least the sum of five hundred dollars, nor until there is endorsed on such articles of association, or annexed thereto, an affidavit, made by at least three of the directors named in said articles of association, that the amount of stock required by this section has been in good faith subscribed and paid in cash as aforesaid, and that it is intended, in good faith, to construct or maintain and operate the railway mentioned in such articles of association, which affidavit shall be recorded with the articles of association as aforesaid."

Section 117, so far as material to the case in hand, is as follows:

"Section 117. That any corporation created under this Act for the purpose of constructing a railway, shall commence the proposed construction within six months from the date of its organization and complete at least one track of such railway within two years from the date of commencement as aforesaid; provided, that if any such company or corporation organized under this Act shall fail to comply with the provisions of this section, it shall thereby forfeit the franchises given it by this Act.

[1-3] Careful consideration has produced the conviction that with respect to the first three counts this action cannot be sustained. It is true that the receiver was authorized to bring suit at law or in equity against the defendant for the recovery of assets of the interurban company in his custody and possession; but such an *ex parte*

authorization cannot be treated as a final determination in advance by this court of the jurisdictional validity or propriety or legality of any particular proceeding, whether at law or in equity, that might be instituted in consequence of that authority. The plaintiff has resorted to an action of assumpsit, which lies for the recovery of damages for breach of a parol contract. To sustain the action it must appear that there was a valid contract, express or implied, on the part of the defendant and a breach by him. And in order that such a contract might exist on his part it was necessary that there should be a consideration to support it. An examination of the averments in the first, second and third counts of the declaration will fail to disclose either a contract or any consideration which could support a contract as between the defendant and the interurban company. It is true that in the first count it is in effect stated that the defendant on receiving the $14,000 from his predecessor in the office of state treasurer became liable under sections 108 and 117 of the general corporation law to pay the same to the interurban company, together with interest accrued thereon, while in his custody, and that in consideration of such liability the defendant undertook and promised to pay that company that sum together with such interest when requested. And it is also true that in the second count it is in effect alleged that in consideration of the deposit with the defendant of the $14,000 he undertook and promised the interurban company to pay to it the same together with interest accrued thereon while in his custody when requested. And in the third count it is in effect alleged that in consideration of the deposit with the defendant of the $14,000 he undertook and promised the interurban company to keep the same in his custody subject to be repaid to the directors or treasurer of that company in sums of $1,000 for each mile of railway upon the construction of which it should be proved to his satisfaction that the company had expended at least $1,000, or, if the railway was not constructed and built and its franchises became thereby forfeited, to pay the $14,000 with any interest accrued thereon to the company when requested. The allegations in the counts in question of contractual relations between the defendant and the interurban company are erroneous averments of matter of law and as such not admitted on demurrer. The moneys deposited by the directors of the suburban and interurban companies with the state treasurer were not illegally exacted by him nor paid to him under protest. They were not paid to him for his own benefit, nor was it by reason of any requirement by him that they were paid. They were paid in obedience to the mandate of the general corporation law for the accomplishment of its purposes, and their receipt by the state treasurer could not constitute any consideration for a binding undertaking or contract by him for their repayment. There was absolutely no consideration to support any supposed contract on his part to repay the whole or any part of the $14,000 or its interest. If he was clothed with any duty to refund to the company, that duty did not arise by virtue of any contract on his part resulting from the deposit of the

moneys with him, but was created solely by the provisions of the general corporation law. So far as the first three counts are concerned whatever contract may have existed with the interurban company was one, not with the defendant, but one between the state of Delaware and that company, for any breach of which this action cannot in any aspect of the case be sustained.

Wholly aside from the foregoing considerations this court strongly inclines to the opinion that the plaintiff on the facts set forth in the first three counts is not entitled to recover the moneys deposited by the suburban and interurban companies with the state treasurer under any form of remedy, legal or equitable, and that whatever hardship may exist calls for legislative and not judicial relief. But in view of the conclusion reached as to the legal impropriety of this action it is not necessary to consider other difficulties confronting the plaintiff. The demurrers to the first three counts must be sustained.

The fourth count, unlike those preceding it, does not set forth facts necessarily showing the invalidity or impossibility of the alleged contract of the defendant to pay to the interurban company the moneys mentioned in that count, and the demurrer to that count must be overruled.