STEPHEN SLAUGHTER, Receiver of the Delaware General Electric Railway Company,

*vs.*

DAVID O. MOORE, LEWIS HEISLER BALL, MARTIN B. BURRIS and THOMAS N. RAWLINS.

*Kent County, April* 10, 1912.

A receiver of a dissolved corporation, which corporation had deposited with the State Treasurer under *section* 108 of the general corporation law of 1899, and which had not constructed a single mile of the railway, is not entitled to re-payment of the moneys so deposited.

The power given the Court of Chancery by *section* 43 of the general corporation law to appoint a receiver for a dissolved corporation "at any time", is not limited to three years from expiration or dissolution.

The fact that *section* 108 of the general corporation law was adopted from the New Jersey statutes, and that the New Jersey Legislature afterwards passed another Act requiring the State Treasurer to re-pay money deposited with him under similar circumstances, does not require a similar construction of the Delaware statute, and authorize the Delaware State Treasurer to return to depositors the fund deposited under *section* 108 of the general corporation law, since the original legislative purpose in New Jersey in requiring the deposits might have been different from that in Delaware.

As a rule, a state which adopts a statute of another state, also adopts the judicial construction of the statute by the courts of the latter state.

BILL FOR THE RE-PAYMENT OF MONEY DEPOSITED WITH THE STATE TREASURER TO GUARANTEE THE CONSTRUCTION OF A RAILWAY. The Delaware General Electric Railway Company was duly incorporated on September 6th, 1899, under the general corporation law of the State of Delaware, and deposited $17,500 with the then State Treasurer, as required by § 105, *c.* 273, *v.* 21, *Laws of Dealware.* The right to this deposit was later assigned by the company to John B. Wharton, and on April 4th, 1902, the company was voluntarily dissolved. In 1908 Stephen Slaughter was appointed receiver of said company *pendente lite*, took possession of all its assets, other than the deposit in question, and converted them into cash. Afterwards the said Stephen Slaughter was made permanent receiver and filed this bill against four persons individually, (one of whom was State Treasurer at the time of the filing of the bill and the other three were his predecessors in office), for the purpose of enforcing re-payment of the moneys deposited as aforesaid. Each of the defendants filed general demurrers to the bill, and the cause was heard on bill and demurrers. The facts are more fully set forth in the opinion.

*Richard R. Kenney*, of Dover, and *Leo Belmont*, of the Philadelphia Bar, for the complainant.

The purpose of the Act would seem to be plain. It is to secure the application of money subscribed for stock to build a railway in this State, the purpose for which it was subscribed by the stockholders. There is nothing in *section* 108 of the general corporation law to indicate that by making the deposit the corporation in any sense divested itself of its right of property in the money so subscribed. For the security of the stockholders who have subscribed the money, the State, which has granted the franchise, undertakes to see that the amount required to be deposited for each mile of railway to be built is expended only and solely for that purpose. Neither the State nor anyone else can use it for any other purpose, and if it is not expended for the purpose for which it is intended it

remains, as before, the property of the corporation and must be returned to it, or to its legal representatives, to be paid to creditors and to the stockholders who subscribed it for one purpose only, with the implicit understanding that if it is not used for that purpose it is to be returned. It would seem, therefore, that there could be no clearer case of a trust, which is one of the principal functions of this Court to protect and enforce.

The only sections of the general corporation law of the State of Delaware, referring to the incorporation and deposit of funds in the hands of the State Treasurer, "as custodian", and referring to any penalties and forfeitures in case of failure to complete any road, are *sections* 108 and 117. *Section* 108 sets forth in detail the steps to be taken to incorporate a railway company, and *section* 117 states, *inter alia,* "provided that if any such company or corporation organized under this Act shall fail to comply with the provisions of this section, it shall thereby forfeit the franchises given it by this Act."

There can be no question of the legal doctrine that the law abhors forfeiture, and any forfeiture by statute, or otherwise, must be strictly construed and plainly set out. Forfeiture can never be inferred. *Booth on Street Railways*, § 47; *Cook on Corp.*, § 913; 19 *Cyc.* 1358; 6 *Enc. of Law*, 502; *American Emigrant Co. v. Adams Co.*, 100 *U. S.* 61; *Los Angeles University v. Swarth*, 107 *'Fed.* 798; *Crawford, etc., Ry. Co. v. Meadville*, 228 *Pa. St.* 606; *Sulphur Springs Ry. Co. v. St. Louis, etc., Ry. Co.*, 2 *Tex. Civ. App.* 650, 22 *S. W.* 107. The only cases when forfeiture of money deposited has been allowed is where there was a specific agreement between the parties to forfeit in case of default. *R. R. Co. v. Peekskill*, 21 *N. Y. App. Div.* 94; *Adams v. Ry. Co.*, 30 *So.* 58.

There can be no possible discrimination upon any legal ground, or for that matter upon any common sense ground, between the relation of the Insurance Commissioner to funds deposited under the insurance laws of the State and that of the State Treasurer to the funds now under consideration. In each case the officer is merely a trustee *virtute officii*, and his duties are purely ministerial. *Willson v. Swain*, 60 *N. J. L.* 115. Upon dissolution of the corporation, all its property and assets,

including this deposit, became a trust fund for creditors and stockholders.    The common law rule of reverter and escheat of the corporate property is modified by courts of equity, which hold that the right of property of the corporation is preserved after dissolution for the benefit of creditors and stockholders and that the franchise alone, and not the property right, is terminated.    *Diamond St. Iron Co. v. Husbands*, 8 *Del. Ch.* 205; *Greenwood v. Freight Co.*, 105 *U. S.* 13; *Elliott on Railroads*, (*2nd ed.*) §§ 611-613; *Eastman on Corp.* § 618; *Harmony Bldg. Asso. v. Berger*, 17 *Phila.* 314.    The dissolution in the case at bar having been under and in accordance with the law, the State has assented to it, and, therefore, necessarily to the return and administration of all its property, including the deposit.

The construction given to a similar statute in New Jersey is binding upon this Court.    *Wilmington City Ry. Co. v. Peoples Ry. Co.*, 47 *Atl.* 245.    Undoubtedly under the law and practice in that State, as shown by the proof here produced, if the question had been brought before a court of equity, as is now done here, the trust would have been declared, and, its purpose having been accomplished, the money would have been ordered paid back.    In the absence of a judicial decision, however, the Legislature intervened and by an act approved April 23rd, 1888, gave a legislative construction to the original Act, which is not only a reasonable and necessary interpretation of it, but, under the decision of the Court, must be presumed to be within the contemplation of our own Legislature when it adopted the New Jersey statute requiring a deposit, and is presumed to have been enacted in view of the construction given to the similar statute in New Jersey.    2 *Suth. Constr.*, § 358; *Rex v. Loxdale*, 1 *Burr.* 445; *So'omons v. Miller*, 3 *Exch.* 773; *Henry v. Tiloson*, 17 *Vt.* 479; *Coutant v. People*, 11 *Wend.* 511; *Pike v. Megoun, et al.*, 44 *Mo.* 491; *Koshkonong v. Burton*, 104 *U. S.* 668; *Robertson v. Baxter*, 57 *Mich.* 127.    A practical executive construction of a former act will generally be presumed to have been had in view in the adoption of similar language in later Acts. *State v. Moore*, 50 *Neb.* 88, 6 *Am. St. Rep.* 538.    Upon this principle, the Legislature of Delaware, when it enacted the provision in the terms of a New Jersey statute, which has been sub-

sequently construed by the New Jersey Legislature, must be presumed to have had that construction in contemplation.

Whether this fund is a trust fund, or not, is to be decided, (a) from the condition under which the sums were deposited; and (b) from the construction of the statute under which it was deposited, which interpretation may be gathered from the judicial interpretation of the statute itself, or of the statute of New Jersey, from which the Delaware statute was taken almost *in ipsissimis verbis*.

This is not a suit against the State. It is erroneously urged that this is a suit against the State, but in the ruling case, under an identical statute, of *Wilson v. Swain*, 60 *N. J. L.* 115, the Supreme Court of New Jersey held that a suit against the State Treasurer to compel him to pay out the moneys deposited by a railway company, under conditions identical with ours, was not a suit against the State, and a *mandamus* was issued ordering him to pay the fund to the receiver of the corporation, which conditions are exactly identical with ours. *Reagan v. Farmers' Loan & Trust Co.*, 154 *U. S.* 362; *Ex parte Ayers*, 123 *U. S.* 443; *Pennoyer v. McConnaughy*, 140 *U. S.* 1.

*Andrew C. Gray*, Attorney General, for the defendant, David O. Moore.

It may be accepted as a point of departure in question, that the State cannot be sued as defendant in any Court in this country without its consent, except in the limited class of cases in which a state may be made a party in the Supreme Court of the United States, by virtue of its special original jurisdiction conferred by the Constitution. This principle is conceded in all the cases. But in a desire to do what the Courts deem justice, which in many cases the courts feel will be defeated by an unwarranted extension of the above principle, they have in some instances held the State not to be a necessary party, though some interest of hers may be more or less affected by the decision. In many of these cases the action of courts has been based upon principles which have been upheld by the highest courts of this country. They may be divided into three classes:

1. It has been held in the classes of cases where property

of the State, or property in which the State has an interest, comes before the Court and under its control in the regular course of judicial administration, without being forcibly taken from the possession of the government, that the State, if it chooses to come in, will be permitted to do so, and receive the same consideration as any other party interested in the matter.

2.    Another class of cases is, where an individual is sued in tort for some act injurious to another, in regard to person or property, to which his defense is that he has acted under the orders of the government. In these cases he is not sued because he is an officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts authority of such officer.    To make out his defense he must show that his authority was sufficient in law to protect him.

3.    A third class which has given rise to more controversy, is where the law has imposed upon an officer of the government a well defined duty in regard to a specific matter not affecting the general powers or functions of the government, but in the performance of which one or more individuals have a distinct interest, capable of enforcement by judicial process. Of this class are writs of *mandamus* to public officers. *Louisiana v. Jumel*, 107 *U. S.* 711; *Cunningham v. R. R. Co.*, 109 *U. S.* 446; *In re Ayers*, 123 *U. S.* 443; *Fitts v. McGhee,* 172 *U. S.* 516; *Smith v. Reeves*, 178 *U. S.* 436; *Ex parte Young*, 209 *U. S.* 183; *Farmers' Bank v. Ball, St. Treas.*, 2 *Penn.* 374; *Brown University v. R. I. College*, 56 *Fed.* 55; *Tate, Treas., v. Salmon*, 79 *Ky.* 540 (the facts in this case are almost identical, except the deposit was with the Insurance Commissioner); *Printup v. R. R. Co.*, 45 *Ga.* 365; *Hosner v. De Young*, 1 *Tex.* 764.    The foregoing cases directly involve the rights of the State.    See also, *Union Trust Co. v. Stearns*, 119 *Fed.* 790; *Arbuckle v. Blackburn*, 113 *Fed.* 616; *R. R. Comr's. v. P. & A. R. R. Co.*, 24 *Fla.* 417; *Loder v. Baker, Arnold & Co.*, 39 *N. J. L.* 49.

Where the suit is against an individual by name, he should raise the question as to whether or not it is in reality a suit against the state, preferably by demurrer, and, if not, it should be presented by other pleas.    *Illinois Central R. R. Co. v. Adams*, 180 U. S. 28.

The Court will, of course, read *Sections* 108 and 117 of the general corporation law of the State of Delaware, and furthermore *Chapter* 51, *page* 104, *Laws of Delaware*, 1909. We would call especial attention to *Sections* 2, 3 and 4 of this Act, and to the duties of the State Treasurer as provided in *Section* 2, *page* 249, and *Section* 43, *page* 448, *Revised Code* of 1893.

The complainant's contention is, that the main question at issue is the right of the State Treasurer to hold on to the sum deposited with him, where the money has not been spent, and where by reason of the dissolution of the corporation it can never be spent, by that corporation.

In our opinion, the main question is, whether under the general duties prescribed for the State Treasurer of the State of Delaware, and under the provisions of the general corporation law, this suit, which is brought not against David O. Moore personally but against the State Treasurer of the State of Delaware, is not indirectly an attempt to sue and collect from the State of Delaware the moneys specified in the bill.

What are the facts on the record? Under the general corporation law a number of individuals attempted to secure a franchise from the State of Delaware to build an electric railway, under which franchise, among other things, it would secure from the State the power of eminent domain. In consideration of the granting of such franchise, which was in the nature of a contract between the individuals (afterwards merged in the corporation) and the State of Delaware, the State of Delaware required a deposit to be made before a franchise was granted, equivalent to five hundred dollars a mile. The State of Delaware being a government compelled to act through its agents, required a deposit with it, through its agent, namely, one of its state officers, the State Treasurer, of five hundred dollars a mile upon the road proposed. In addition to this the State required a certificate to be filed with its proper agent, stating that it was the intention of the incorporators, in good faith, to build the road. The State further contracted with the corporation that as it should build the road it would pay to it five hundred dollars a mile upon receipt of a certificate by the State, through its agent

duly named, of the expenditure by the corporation of at least five hundred dollars on each mile. The State further provided, and the corporation agreed, that unless at least one track of the road were completed within one year and six months the franchises of the corporation should be forfeited. This was purely and wholly a contract between the State and the corporation.

The corporation in performance of its contract with the State deposited the required money. The State granted the franchises, and agreed to pay the corporation five hundred dollars per mile on building the road as provided in the contract. This was not a deposit as an evidence of good faith, but a deposit with the State, under a contract with the State, of the money required as a guarantee that the road would be built within the time limited. This appears from the fact that the State required a distinct covenant on the part of the corporation as to its good faith; to wit, the affidavit required to be filed. This, the defendant in this case maintains, is shown by the record and the public laws of the State.

For the purposes of this argument, however, this defendant does not deem it necessary to insist upon this view, but is content to take the view of the contract adopted by the complainant; to wit, that a contract was entered into between the corporation and the State of Delaware, by which the corporation deposited five hundred dollars per mile as an evidence of good faith, and that the money was deposited with the State through its duly nominated and constituted agent, to wit, the State Treasurer; and that the State agreed that in the event of the corporation not availing itself of its franchises within the time limited the State would re-pay to the corporation the amount so deposited by it. But nowhere is there any contract other than between the State of Delaware and the corporation. The State Treasurer certainly entered into no contract, express or implied. The State Treasurer received the money because required to do so by the State of Delaware, as State Treasurer, for and on behalf of the State of Delaware, and as the regularly constituted custodian of the public moneys of the State of Delaware.

The ministerial duties of the State Treasurer of the State of Delaware are to be found in his obligations to the State of Delaware, to account to it for the moneys deposited with him as State Treasurer and to account to it for moneys paid out by him as Treasurer of the State of Delaware, which moneys can only be paid out by him on the direction and by the authority of the State of Delaware. A ministerial duty of an arm of the State must be by explicit and direct command of a statute. There is, however, no command in the general corporation law upon the State Treasurer to pay out to any electric railway corporation any moneys, except on the contingency provided for in the law and which has not arisen in this case; to wit, upon the expenditure of certain sums in the building of the road.

This is well expressed in a statement of the Supreme Court of the United States, to wit:

"A well defined duty in regard to a specific matter not affecting the general powers or functions of the government but in the performance of which one or more individuals have a distinct interest capable of enforcement by judicial process."

Is not the death warrant of this action signed by the very form of the action itself? It is an action on a contract, directed against the State Treasurer. What contract has the State Treasurer entered into? On a decree in favor of the complainant in this action, what execution would be possible which would not be made out of the State of Delaware? If there be no right without a remedy, if there can be no futile judgment, what can the Court do? Against whom can a decree for the payment of money be enforced? It cannot be against the goods and chattels, lands and tenements of David O. Moore personally. If it be against the goods and chattels in his hands as State Treasurer, then it is directed against the goods and chattels of the State of Delaware, and necessarily can be but an empty and meaningless thing.

The allegation in the bill is merely that a former State Treasurer received this deposit as State Treasurer. There is no allegation that it was kept as a separate and distinct *res* which the arm of the law can reach out and touch and claim as a trust fund. And we would here state that even if this money

had been kept apart, even if the actual bank notes or gold coins received had been kept intact, yet before a court can reach out and seize such *res* as a trust fund, it must be in the personal custody of some one who can be stamped with the character of a trustee, and not in the custody of the State, which necessarily must hold any property or tangible thing through the instrumentality of agents. It might well be that the State had intended to hold such property as a trust fund, and yet it cannot be taken by the arm of any court from the possession of the State unless the State has not only acknowledged that it holds as a trust fund, but further has imposed by law upon its agent through which it holds the custody of the trust a duty to perform in distributing the same, wherein and whereby the agent of the State holding for and as the State becomes charged with a ministerial duty, which is not a contract duty with a person having an interest in the fund, but which is such a duty as may be enforced by *mandamus*, or a wrongful performance of such ministerial duty as may be prevented by injunction.

It is further worthy of remark here that there is no allegation or suggestion in this case that the State Treasurer is violating any law either of the State, or of the United States, or is acting or refusing to act under and by virtue of a State law which is in contravention to either the State or Federal Constitution.

The real test, as to whether such a suit as the one now before the Court against a State official is in law one against the State itself, is clearly laid down in the cases. It is perfectly settled that a contract obligation of the State cannot be indirectly enforced by a suit against a State official, as for instance the State Treasurer. This is true even though the State may wrongfully repudiate its contract and thus deprive the complainant, with whom it has contracted, of any redress.

What is this suit before the Court at most but a contract obligation of the State to pay over the money to an electric railway company for failure to avail itself of its franchises? If this be so, the suit is not maintainable. Granting, for the sake of the argument, that the State did contract to pay the amount which was deposited by the electric railway company in the event of its failure to avail itself of its franchises, yet as

appears by the law of the State of Delaware of 1909, and by the record of this suit, before this suit was instituted the State of Delaware had (if such a contract there was) repudiated its contract. This above principle was fully decided in the case of *Louisiana v. Jumel*, 107 *U. S.* 711.

To briefly review the other Suprème Court cases the facts plainly differentiate them from the case before this Court. *United States v. Peters*, 5 *Cranch* 115; *Board of Liquidation, et al., v. McComb*, 92 *U. S.* 531; *Schooner Exchange v. McFaddon, et al.*, 7 *Cranch* 116; *United States v. Lee*, 106 *U. S.* 196; *Osborne v. Bank*, 9 *Wheat.* 738; *The Davis Case*, 10 *Wall.* 15; *Poindexter v. Greenhow*, 114 *U. S.* 270; *Pennoyer v. McConnaughey*, 140 *U. S.* 1; *Rolston v. Missouri Commissioners*, 120 *U. S.* 390.

An examination of the case of *Chaffraix v. Board of Liquidation*, 11 *Fed.* 638 will, we think, disclose to the Court that it is no authority in support of the complainant's contention. Also the case of *State v. Bank Comptroller*, 21 *Wis.* 214, is completely overthorown by the Supreme Court in the case of *Smith v. Reeves*, 178 *U. S.* 436.

No matter whether there has been an express forfeiture or not; no matter whether it might seem to be a hardship upon the plaintiff or not; no matter whether, considered as a moral question, the State should pay over to the complainant the amount deposited by him, the fact remains that the money was voluntarily deposited by the complainant's representative under a contract with the State and the State decreed that its custodian should be its State Treasurer. The State Treasurer, as State Treasurer or personally, never contracted with the complainant's representative. Neither Lewis Heisler Ball, Martin B. Burris, Thomas N. Rawlins or David O. Moore ever had personal possession of this money. The State Treasurer never had any plain ministerial duty enjoined upon him by the State to pay over this amount of money to the complainant, or to his representative, under the facts as they appear in this case. The only contract made was between the complainant's representative and the State of Delaware. The State Treasurer entered into no contract with the complainant,

express or implied. The defendant, Moore, while State Treasurer, is not the same individual State Treasurer who actually received these moneys.

In this connection we would call the special attention of the Court to the case of the *Governor of Georgia, Claimant of Sundry African Slaves, v. Madrazo*, 1 *Peters* 110. The defendant is not sued personally but as State Treasurer, and as State Treasurer he can hold only funds of the State, or in which the State has an interest, and can pay out such funds only as authorized by the State to do so. The law of 1909 is instructive and helpful, for whatever may be the contention of the complainant, before he attempted to enforce any right, the State had laid its hand definitely and by name on the fund that he seeks to recover and had disposed of it, not by its agent, the State Treasurer, but by its agent, a board for the benefit of the State. This, even admitting all the other contentions of the complainant brings this case on all fours with the *Jumel* case in 107 *U. S.*

Granting all the contentions of the complainant, yet we are confronted with the fact that when this suit was instituted it was against a man not in his personal but in his official capacity, when the sole subject of the suit, as appears by the public laws of Delaware, was no longer in his possession or control.

Consider now, briefly, the aspects of this case and the principles of law to be applied. Of course the main contention of the defendant is that suit cannot be maintained on account of the Eleventh Amendment of the Federal Constitution. The history of the adoption of this Amendment is very fully given in the memorandum of argument of Mr. John Randolph Tucker, in the case of *In re Ayers*, 123 *U. S.* 443.

Where a State prosecutes a citizen for a crime and convicts him, under certain circumstances the citizen may appeal from the highest state court to the Supreme Court of the United States under the twenty-fifth section of the Judiciary Act. *Cohens v. Virginia*, 6 *Wheat*. 864. The same doctrine will hold where the State in a civil suit obtains a judgment against a citizen contrary to his claim of right under the Constitution, Laws or Treatises of the United States.

But the question directly before this Court is, can the Eleventh Amendment be evaded in its operation by suing the officers, members or other functionaries of the State, and not suing the State by them?

In the leading case of *In re Ayers*, the Attorney General, under a statute of Virginia, attempted to sue delinquent tax-payers after they had tendered tax receivable coupons in payment of their taxes, which the Supreme Court, in 107 *U. S.* 769, and 114 *U. S.* 277, had held that the State was bound to receive. An appeal was filed, praying an injunction against the Attorney General, forbidding him to bring the suits which the statutes of the State had ordered. The Attorney General proceeded to sue, despite the injunction. The Judge of the United States Court fined and imprisoned him for contempt. He brought his writ of *habeas corpus* issued from the Supreme Court. The Supreme Court held, in the learned opinion of Mr. Justice Matthews, that the State had a constitutional right to sue and as it could sue only by its officers an injunction against the officers was an injunction against the State, and the officer was released under the *habeas corpus*.

This case was followed by *McGahey v. Virginia*, 135 *U. S.* 662.

The case now before the Court is an indirect suit against the State of Delaware; but by name against one of her executive officers, to control him in the exercise of his official functions as an agent of the State.

There is no doubt that it has been held by the Supreme Court, and we do not dispute the correctness of its rulings, that where the State by its officers takes affirmative action, as by seizing property of a citizen, contrary to his right claimed under the Federal Constitution, such citizen may sue the officer and the officer cannot plead, in justification, that he was authorized by law and he therefore is virtually the agent of the State, because the State cannot authorize an act which by the Federal Constitution it is forbidden to do. Consequently, such suit will not be contrary to the Eleventh Amendment because the officer cannot make his act the act of the State when the State, by the Constitution, is forbidden to do the act.

Under this class of cases properly come various cases in the Supreme Court, but these cases are not applicable to the case before the Court, as they relate to a state of facts where there was attempted affirmative unconstitutional action of a State officer. These cases are: *The Coupon cases*, 114 *U. S.* 269; *Cunningham v. R. R.*, 109 *U. S.* 446; *Hagood v. Southern*, 117 *U. S.* 52; *Davis v. Gray*, 16 *Wall.* 203; *Tomlinson v. Branch*, 15 *Wall.* 460; *Litchfield v. County of Webster*, 101 *U. S.* 773; *Board of Liquidation v. McComb*, 92 *U. S.* 531.

All of the above cases are fully reviewed by Justices Bradley and Lamar in *McGahey v. Virginia*, and *Pennoyer v. McConnaughey*, and we would also call attention to the opinion in the case of *Fitts v. McGhee*, 172 *U. S.* 516.

What has been decided by the above cited cases is this: That no suit against the State or its officers is allowed by the eleventh amendment to compel any affirmative action against the State or its officers. The State cannot be so enforced and its officers can only be compelled to perform a ministerial duty plainly imposed upon them by the State by the remedy of *mandamus*. But the cases above cited further say that where one is seeking a remedy which is different from the remedy sought here, and upon a state of facts different from that present in the case before the Court, then where the State through its officers is attempting to take affirmative action or has taken affirmative action against a citizen, contrary to this constitutional right, he may either prevent it by injunction, or redress it by personal action against the officer, and because the officer is without constitutional authority from the State to do the act judgment will be allowed against the officer.

It is to be noted that this is substantially the same principle which the decision in *Lee v. Kauffman* rested. In other words, the officer of the State is the State so far as any suit against him is concerned, where he performs the duties which the State has constitutional power to impose upon him. But where the State has no constitutional power to impose the duty, then his act is defenseless under the law of the State, and he is liable for it as an individual.

*Robert G. Houston*, for the defendant, Thomas N. Rawlins.

The real question at issue is the construction of § 108, *c.* 273, *v.* 21, *Laws of Delaware.* That is, (1) whether under the language of said section the deposit made with the State Treasurer was forfeited to the State of Delaware by failure of said corporation, of which the complainant is receiver, to complete the said railway; or (2) whether said deposit became a trust fund in the hands of the State Treasurer, as custodian thereof, to be returned to said corporation, or its assignee. No question of law is better settled than that the creation of a corporation by a state is a contract between the state and the incorporators. *Bailey v. T. R. Co.*, 4 *Houst.* 389; *Rice v. Foster, id.* 49; *R. R. Co. v. Bowers, id.* 506. *Section* 108, above referred to is, therefore, a part of the contract entered into between the State of Delaware and the incorporators of the Delaware General Electric Railway Company to construct a railway in the State of Delaware. By its failure to carry out its part of the contract with the State, the company clearly forfeited the deposit made in confirmation thereof. While forfeitures are not favored in equity, this Court has already clearly defined its powers in relation to forfeitures in *Kersey, et al., v. Bailey, et al.*, 2 *Del. Ch.* 330. The jurisdiction of this Court is expressly limited in cases of forfeiture by *Chap.* 215, *vol.* 12, *of the Revised Code, p.* 709, which, it is respectfully submitted, controls this case, notwithstanding the decisions quoted upon this point by the complainant. In specifying the duties of the State Treasurer, *Chap.* 29 *of the Revised Code, p.* 249, provides that "he shall have the custody of the money belonging to the State", so that if this word custodian is given its meaning in connection with the duties of the State Treasurer, as defined by this section, the language of *section* 108 of the general corporation law makes this deposit, or fund, in question, a part of the moneys of the State of Delaware in the custody of the State Treasurer, "subject to be repaid" (not returned) to the railway company upon the performance of the condition therein set forth. The intention to create a trust nowhere appears in *section* 108 of the general corporation law, and it has been held that a resulting trust must attach, if at all, by virtue of

the transaction itself, and that it cannot be raised from a subsequent matter *ex post facto.*   It is also true, as a general rule, that the law never implies, the Court never presumes, a trust. *Pierson v. Pierson,* 5 *Del. Ch.* 11.

In the absence of any decision by the courts of New Jersey interpretating the language of this statute, it is respectfully submitted that the passage of said Act by the Legislature, repaying moneys similarly deposited in that State, may be considered as an admission that the corporation depositors of said fund were without legal remedy and were compelled to resort to legislation to secure the re-payment thereof, which is the contention of the defendants in this case.

It is respectfully urged on behalf of this defendant, that, not now being State Treasurer, the custodian of the funds in question, he has not that interest in the subject matter which can make him liable to the claim of the complainant.   If this Court should decide in behalf of the contention of the complainant, no decree against this defendant would effect the return of the fund in question, and no decree to compel its re-payment would be necessary against him.   Therefore, as to him, this bill should be dismissed on demurrer.

*Charles B. Evans,* for the defendant, Lewis Heisler Ball and *Martin B. Burris,* for the defendant, Martin B. Burris did not participate in the argument.

THE CHANCELLOR: This case is before the Court on demurrers to the bill.   The bill was filed June 8th, 1910, by the receiver of the Delaware General Electric Railway Company against four persons individually, one of these persons being, as alleged, the then State Treasurer, and the other three being his predecessors in office, and the object of the bill is to enforce re-payment of moneys paid to the State Treasurer pursuant to the general corporation Act.   By the Act corporations may be created to build railways by filing articles of association, and one of the requirements is that the capital stock of the company shall be not less than $2,000 per mile of the proposed railway.   Before the articles can be filed certain requirements

must be complied with, being those in *section* 108 of the present Act (22 *Del. Laws*, *c.* 166), which is identical with *section* 105 of the Act in force at the time the deposit in question was made (21 *Del. Laws*, *c.* 273). The section is as follows:

"Sec. 108. Articles of association, in compliance with the provisions of *sections* 106 and 107 of this Act as amended shall not be filed and recorded in the office of the Secretary of State until at least five hundred dollars of stock for every mile of railway proposed to be made is subscribed thereto and paid, in good faith and in cash, to the directors named in said articles of association, nor until the directors shall have deposited the said moneys so subscribed and paid to them with the State Treasurer, who is constituted the custodian of the same, and shall hold the same, subject to be re-paid to the directors of the said corporation, or to the treasurer thereof, in sums of five hundred dollars for each mile of said railway, only upon the construction of which it shall be proved, to his satisfaction, that the said corporation has expended at least the sum of five hundred dollars, nor until there is endorsed on such articles of association, or annexed thereto, an affidavit, made by at least three of the directors named in said articles of association, that the amount of stock required by this section has been in good faith, subscribed and paid in cash as aforesaid, and that it is intended, in good faith, to construct or maintain and operate the railway mentioned in such articles of association, which affidavit shall be recorded with the articles of association as aforesaid."

By the bill it appears that in 1899 the Delaware General Electric Railway Company was incorporated under the general corporation Act of March 10th, 1899, to build an electric railway between Milford and Smyrna, and pursuant to the above section deposited with Lewis Heisler Ball, one of the defendants, the then State Treasurer, $17,500, being $500 per mile of railway contemplated. Subscriptions to stock amounting to $500 per mile were received by the company and they were paid in cash and in good faith. There is no allegation in the bill that the affidavit required by the above quoted section was made and filed, the affidavit being, among other things, that it was intended in good faith to construct, or maintain and operate the railway. Some work was done towards construction, but the cost of such work does not appear, and so it is not alleged that at least $500 had been expended on any one mile of the railway. In 1902 an attempt was made to have further work done by another corporation, the Delaware Electric Traction Com-

pany, and as part of the arrangement the interest of the depositing company in the deposit of $17,500 was, on April 3rd, 1902, assigned to John B. Wharton, trustee.   On the same day, April 3rd, 1902, a certificate of dissolution of the Delaware General Electric Railway Company was filed.   On April 17th, 1902, the Delaware Electric Traction Company was incorporated to build over the right of way acquired by the first named company, but in fact it did nothing substantial in the matter.   In 1907 a suit was brought, presumably by a stockholder of the Delaware General Electric Railway Company, against that company and Wharton, trustee, and in 1909, in that suit, Stephen Slaughter was made receiver of the Delaware General Electric Railway Company, and Wharton, trustee, was ordered by the decree of the Court to assign to Slaughter, receiver, the present complainant, the interest in the above deposit of $17,500, which was done.

Ball, State Treasurer, in 1899, was succeeded in office by Burris, Burris by Rawlins, and Rawlins by Moore, the present State Treasurer (1912).   The bill alleged that Ball, State Treasurer, received the deposit as custodian and, therefore, as trustee, and that it was his duty to pay it over to his successor and so on, and that the succeeding Treasurers were also custodians or trustees.   The failure of the defendants to pay over the deposit to the representative of the Delaware General Electric Railway Company is alleged.   To the bill each of the defendants has demurred generally and the case was argued upon the demurrers.

Thus it appears affirmatively that the moneys were deposited with Ball, State Treasurer, as custodian; that the deposit was paid as a prerequisite to the obtaining of the franchise to build the railway mentioned; that the railway was not built as a whole, nor any one mile of it, to the extent required by the act; that the original depositor is now, and since 1902, at least, has been permanently and entirely disabled and incapable of doing any work in the construction of the railway or expending any money for the work, for, of course, the receiver of the dissolved corporation cannot and would not be allowed to do so.

Three questions arise and should probably be considered

in this order: (1) Has the Court of Chancery jurisdiction of the cause, or has the complainant a full, adequate and complete remedy in a court of law, either by *mandamus* or an action of assumpsit? (2) Is the suit really against the State of Delaware, though nominally against four individuals who on the bill are described as the present State Treasurer and his three predecessors in that office? (3) Is the complainant entitled to the money?

The complainant urges that the use of the word "custodian" constituted the State Treasurer a trustee for the depositor, and that this gave jurisdiction to the Court of Chancery, and that the complainant had not a legal remedy. Also that the duty to re-pay the moneys deposited was a ministerial duty imposed on the State Treasurer, and, therefore, the suit was not against the State. Neither of these interesting questions need be considered, because the complainant has shown no legal or equitable right to have re-paid to him the money which he seeks. There is no satisfactory authority in point to guide the Court on the main question on the merits. The case of *Willson v. Swain*, (1897), 60 *N. J. Law*, 115, 36 *Atl.* 778, relied upon by the complainant, does not help him. There a railroad company, under a statute apparently similar in language to the Delaware Statute, had paid to the State Treasurer the required sum per mile, and had completed enough of the road to entitle it to have all the balance of the deposit. The receiver of the company applied for it, and the Treasurer refused to pay it to him because an assignee of the depositing company also claimed it. It was, therefore, a contest between two claimants. The Court held that a writ of *mandamus* would lie against the Treasurer in favor of the receiver, saying:

"When such expenditure has been satisfactorily proved to him [the Treasurer], he has nothing to do except to refund the money to the company as directed by the Act. The duty imposed upon him in this regard is purely ministerial in character, and upon his failure to perform it relief by *mandamus* will be granted."

This tends to show that the right of the complainant, if any, is at law by *mandamus*, and certainly does not show that one who has not complied and cannot comply with the prescribed

terms under which the deposit may be re-paid, may still enforce re-payment thereof. The case of *Crawford County, etc., Co. v. Meadville*, 228 *Pa. St.* 606, 77 *Atl.* 928 (1910), relied on by the complainant, is not in point. There a street railway company, as a condition to the granting to it of a right to use certain streets, paid to the city a sum to cover the estimated cost of paving displaced, "in case the track of the company shall be laid in any street which had heretofore been paved." After the time for using the streets expired the company asked re-payment of the deposit, and the Court held it should be repaid, because it was "a mere deposit with the city, to become the money of the city only on condition and when the company entered upon the paved streets." Such a decision was clearly right, but does not throw any light on the question under consideration here.

On the other hand, the case of *Tate v. Salmon*, 79 *Ky.* 540, cited by the defendants as a clear precedent against the right of the complainant, does not seem convincing. There a Virginia insurance company made a deposit with the State Treasurer of Kentucky for the benefit of policy holders, as required by law. Later the company became insolvent and a receiver for it was appointed in Virginia. Policy holders brought suit in Kentucky against the State Treasurer to compel him to deliver the deposit to the receiver. The Court said that the suit could not be brought, because no law had been passed for the disposal of the fund, or providing for such a suit. The Court seemed to regard this as a suit against the State, but it is not satisfactory in its reasoning or result.

To determine the complainant's right to re-payment of the deposits, consideration must, therefore, be given to the Act under which the railway corporation was created, and which became a part of its fundamental law. The deposit required by *section* 108 is not for the protection of stockholders of the railway company. In this respect, the law and its purpose is different from that relating to deposits with the Insurance Commissioner, which are distinctly stated to be for the benefit and protection of policy holders. It may be that the deposit was required because it tends to insure a completion of the railway. The complainant urged that it was not intended to be security

that the road would be completed, because manifestly the sum deposited per mile was a very small proportion of the cost of the railway per mile. But while the completion of the railway is not secured by the deposit, it has a useful purpose in promoting efforts to complete it; for the deposit is to be re-paid mile by mile, and the last portion of the deposit is not re-paid until the minimum amount fixed by the Act has been expended on the last mile.

The deposit may or may not have been required as an evidence of the good faith of the promoters of the enterprise. It is urged by the complainant that such was its purpose, while the defendants contend that it was not, because the affidavit required by *section* 108 was the evidence of good faith. It is probably true that in part the legislative purpose in requiring the deposit was to discourage irresponsible or undesirable persons from using the Act to occupy desirable routes for railways without proper financial support or honest purpose, and so deprive other responsible and desirable investors from building a railway over the same route. The provisions may have been intended to discourage trafficking in franchises, or the use of the franchises so obtained in some improper manner. All of this may have been in the minds of the legislators, and the deposit of $500 per mile tended to prevent this misuse of the powers to be obtained under the Act. If so, then these legislative purposes will be promoted by requiring strictly a performance of the express condition for re-payment of the deposits and denying re-payment of deposits to every depositor who fails to allege the compliance with the condition for such re-payment fixed by the Act under which the deposit was made.

But whether or not these were the legislative purposes and reasons for the provision, it is manifest that the money in question was deposited to be re-paid only upon the performance of a condition, which has not been and cannot now be performed. A sum was deposited and the condition of the re-payment thereof to the depositor was that a certain thing would be done, which has not been done and cannot now be done by the depositor, or any one for it. There is no need for a declaration of forfeiture for non-performance of the conditions, for that is dis-

tinctly and necessarily implied from the existence of the condition and its non-performance. It is of no consequence to the complainant that the State cannot use for its own benefit the money deposited, if such be true, for the complainant must show his right to the money, and not simply deny the right of the holder of the deposit to use it for its own purposes.

It was urged by the complainant that the absence from *section* 117 of the Act of a penalty of forfeiture of the deposits shows that there is no such forfeiture. That section requires that the railway be completed within two years, and concludes thus:

"Provided that if any such company or corporation organized under this Act shall fail to comply with the provisions of this section, it shall thereby forfeit the franchises given it by this Act."

The argument is made that a forfeiture of franchises is the only penalty for failure to build the railway, for there is no mention therein of a forfeiture of the money deposits required by *section* 108. But this is not convincing. Failure to comply with the condition established by *section* 108 to obtain re-payment is as effective to bar the depositor from a right of re-payment as would an express declaration in *section* 117 of forfeiture of the deposit. Therefore, the absence from *section* 117 of an express forfeiture of the money deposited does not relieve the depositor of the consequence of his failure and present inability to perform a necessary condition of re-payment of the deposit.

One alleged defense is untenable. The defendants urged that inasmuch as the present receiver was appointed more than three years after the dissolution of the company, it was an invalid appointment (see *sections* 39-44 of the present general corporation Act). But this question has been definitely and finally settled in this State by the Supreme Court in the case of *Harned v. Beacon Hill Real Estate Company, post, p.* 411, 84 *Atl.* 229, decided at the January Term, 1912, affirming a decree of the Chancellor, wherein it was held that *section* 43 was broad enough to permit the Court to appoint a receiver after three years from dissolution, and at any time, when there is property or assets of the dissolved company to be administered by a receiver. *Harned v. Beacon Hill Real Estate*

*Co., ante p.* 232, 80 *Atl.* 805, affirmed by the Supreme Court on appeal, *post p.* 411.

Attention has been called to an Act approved April 7th, 1909, after the incorporation of the railway company in question, (*chapter* 51, *p.* 104, *vol.* 25, *Laws of Delaware*). By that Act the State Treasurer was directed to keep separate from other funds and accounts "all moneys received from railroads and railways as guarantee deposits", which moneys were thereafter to be designated as the "Railroad and Railway Guarantee Deposit Fund." ' "Any moneys remaining in this fund after the time elapses for the companies making deposits to regain their deposits, as provided in the general incorporation laws of the State", should be invested by a commissioner, and the income be paid into the sinking fund. It is urged for the defendants that this Act operates as a legislative construction of *section* 108 of the general incorporation Act and that the effect of it is to show that there may be a time when the railway corporations making deposits under *section* 108 lose their right to regain them; and if such a corporation ever loses its right to regain such deposits, it does so by suffering a voluntary dissolution of its corporate existence whereby it permanently disables itself from performing the condition precedent. If this later Act be a legislative construction of *section* 108, it probably has no judicial force except for the future. *Robertson v. Baxter*, 57 *Mich.* 127, 23 *N. W.* 711. But in view of the construction and effect here given to *section* 108 it is not important to pass on either of the above contentions, or do more than refer to them.

In New Jersey there is a statute similar to that under consideration here, with a provision said to be like that of *section* 108. After the general incorporation Act was enacted here, another Act was passed there making it a duty of the State Treasurer to re-pay moneys deposited under similar circumstances. This Act recited in the preamble, that the moneys so deposited by railroad corporations could not be used for any purpose by reason of the expiration of the time limited for construction of the railroads, and recited also that "there is no reason why such moneys should be retained by the State." It is urgently contended by the complainant that this supplementary Act was a

legislative construction of the prior general Act, and that, as both were passed prior to the general incorporation Act of Delaware, then in adopting in substance the general incorporation Act of New Jersey, the legislative interpretation thereof, and especially of *section* 108, was also adopted by the General Assembly of Delaware. But that is not a reasonable conclusion. The enactment by the Legislature of New Jersey of the later Act above referred to, may as well indicate a change of legislative purpose as an interpretation of the original one. The original legislative purposes in New Jersey in requiring the deposits may have been quite different from those in Delaware, and therefore in adopting the general Act from New Jersey the Delaware Legislature did not necessarily adopt the so called legislative construction of that general Act. There may have been reasons which the Legislature in Delaware had in mind why the deposits should be retained by the State in a case such as this and not returned to the depositors, or their representatives. Further, it may well be urged against the complainant that in New Jersey it was considered necessary for the Legislature to authorize re-payment of the moneys deposited before it could be done. It is true that if one state adopts a statute theretofore enacted in another state, it adopts also the judicial construction put thereon by the courts of the latter State. *Wilmington City Ry. Co. v. Peoples Ry. Co. (Del. Ch.)*, 47 *Atl.* 245, 251. But manifestly this principle does not apply to the case under consideration.

The conclusions here reached are supported by the declaration of Judge Bradford in a very recent opinion in a case in the District Court of the United States for this District. *Jones v. Moore, State Treasurer*, 198 *Fed.* 301, 305, rendered March 16th, 1912. There Jones, the receiver of a dissolved railway company, brought an action of assumpsit against the State Treasurer in office at the time the suit was brought, and sought thereby to recover a deposit of money made with a prior State Treasurer under the same section and under like circumstances. A demurrer to certain counts of the declaration was sustained, because the counts did not disclose either a contract, or a consideration which could support a contract, as between the

defendant and the corporation for which the plaintiff was the receiver.   On the general question as to the right to recover the deposits like that which the complainant here is seeking to reach, Judge Bradford said:

"Wholly aside from the foregoing considerations this Court strongly inclines to the opinion that the plaintiff on the facts set forth in the first three counts, is not entitled to recover the moneys deposited by the suburban and interurban companies with the State Treasurer under any form of remedy, legal or equitable, and that whatever hardship may exist calls for legislative and not judicial relief.   But in view of the conclusion reached as to the legal impropriety of this action it is not necessary to consider other difficulties confronting the plaintiff."

Being clear, then, that the complainant has not shown himself entitled to have re-paid to him the moneys in question, the demurrers are allowed and sustained on this ground.

Let an order be entered accordingly.