## IN THE MATTER OF THE CONDEMNATION OF THE CAPITAL STOCK OF THE MORRIS CANAL AND BANKING COMPANY.

Argued February 17, 1928—Decided May 14, 1928.

For the appellants, *Edgar W. Hunt.*

For the respondent, *Edward L. Kalzenbach,* attorney-general, and *John J. Mulvaney.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE, The state pursuant to authority conferred by chapter 112 of the statutes of 1923, entitled "An act concerning and regulating the acquisition and taking of shares of the capital stock of the Morris Canal and Banking Company by the State of New Jersey, or any agent thereof, providing a procedure and manner of making compensation therefor" (*Pamph. L., p.* 210), sought to acquire by condemnation certain shares of the capital stock of

the Morris Canal and Banking Company held by various stockholders. The proceedings to be followed in such acquisition are set out in detail in the statute. The state, not being able to acquire the desired stock by purchase, proceeded to exercise the power of condemnation conferred by the statute, following strictly the steps therein indicated. This was done by applying to Mr. Justice Trenchard, of the Supreme Court, to hear and determine the interests of the several stockholders and the amount of damages to be paid by the state for the acquisition of their stock. Acting under section 7 of the statute, and in accordance with the provisions thereof, the justice, instead of himself hearing the matter in the first instance, appointed three commissioners to appraise "the full market value of the stock sought to be acquired by the state, and what damages, if any, should be assessed for the taking of the same." The duty of the commissioners thus appointed was to hear such evidence as was submitted on the part of the state and of the owners of the stock, and then to fix such sum as, in their judgment, would represent the fair market value of the stock sought to be condemned, and report the same to the justice. The commissioners, after hearing testimony, fixed what they considered the present fair value of the stock, and reported their finding to the justice, and, after a consideration of the matter, he affirmed the award of the commissioners, and filed his determination in the office of the clerk of the Supreme Court, and, under the statute, it thereafter had the same force and effect as a judgment entered in the Supreme Court, subject to a review by this court "upon any question of law involved in the proceedings." The present appeals are from the determination of Mr. Justice Trenchard.

The case shows that the report of the commissioners was based upon the market value of the stock at the time of the making of their report, and it was upon this fact that Mr. Justice Trenchard rested his determination. The ground of appeal is that it was an error of law to hold that the market value of the stock was the true criterion of the damages resulting to the stockholders from the taking by the state; that what the commissioners should have done was to have ascer-

tained the total value of all the various properties owned by the canal company, including water rights, which it could not use except for canal purposes, and all other interests vested in it, and having done this, then to divide the amount thus ascertained by the number of shares of stock of the canal company, the quotient thus obtained being, as the appellants contend, the fair value of each share.

It seems to us that this method of ascertaining the fair value of corporate stock suggested by the appellants is unsound, and that Mr. Justice Trenchard was right in his conclusion that the duty of the commissioners, under the statute, was to ascertain and report the market value of the stock, and not the more or less speculative value of the properties and rights upon which it is asserted such market value rested. According to the theory of the appellants, if one of them had desired to sell his stock and had employed a broker to dispose of it at its fair value, the duty of the latter as such employe would have been to disregard the market value of the stock as shown by other sales of such stock made between willing sellers and willing buyers; to cause an investigation to be made for the purpose of ascertaining the full amount of the corporate assets, and the value of each item thereof, and the existing number of shares of corporate stock, and then divide the total value thus ascertained by the number of shares outstanding and, having done this, to offer his customer's stock for sale at the price determined by this method of computation. It can hardly be supposed that, if the broker had been instructed that, by agreeing with the appellant to act for him in attempting to sell his stock at its fair value, he assumed the obligation which we have indicated, he would have accepted the offered employment; or that any other broker would have done so under the same conditions. Common sense and business methods almost universally prevailing in the sale of corporate stock are alike condemnatory of the existence of any such obligation, and we are not able to perceive any difference between the obligation of a broker employed to sell stock at its fair value and the duty imposed by the statute upon the justice and the commissioners in the present case.

For the reasons indicated, the order under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.