NATIONAL BANK OF COMMERCE *vs.* CITY OF NEW BEDFORD.

Bristol.    December 1, 1891. — January 6, 1892.

Present: ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Abatement of Tax — National Bank — Shares of Stock — List of Shareholders.*

Where, on a petition by a national bank for the abatement of a tax, it was found as a fact from the report of a commissioner appointed under the St. of 1890, c. 127, § 5, that for the purposes of taxation the fair cash value of the shares, at which they are assessable by the Pub. Sts. c. 13, § 8, was their market value as found by him, and a ruling was made that upon the facts the assessors had no right to assess the stock upon the basis of the value as shown by the capital stock, the surplus fund, and the undivided profits, irrespective of other evidence in the case, and that such assessment should be abated as to the excess above the fair cash value found to be the market value as first stated, it was *held* that the ruling was correct; and that the fact that, after filing a written protest in due form, the bank paid the full tax assessed less certain discounts, constituted no bar to a recovery.

The word "person," in the Pub. Sts. c. 11, §§ 69, 71, 72, and the St. of 1890, c. 127, § 1, relating to the abatement of taxes, extends to a corporation.

A list, with the name of each shareholder, his residence, and the number of his shares, as required by the Pub. Sts. c. 13, § 11, to be furnished to the assessors of taxes where a bank is located, and where, by § 8, all the shares are to be assessed, satisfies, in the case of national banks, the requirement of the Pub. Sts. c. 11, § 72, which provide that no person shall have an abatement of. taxes unless he has filed with the assessors a list subscribed by him of his estate liable to taxation.

Whether, under the Pub. Sts. c. 11, §§ 69, 71, and the St. of 1890, c. 127, which provide for the abatement of taxes, the Superior Court should determine afresh, on the facts and within the limits of its appellate action, what a fair assessment would be, and what, if any, abatement is reasonable, irrespective of what the assessors had or had not a right to do, *quære.*

PETITION for the abatement of a tax.    Hearing in the Superior Court before *Hopkins,* J., who reported the case for the determination of this court.    The facts appear in the opinion.

*C. W. Clifford,* for the petitioner.

*E. Avery & T. F. Desmond,* for the respondent.

HOLMES, J.    The petitioner appealed to the Superior Court, under the St. of 1890, c. 127, § 1, from the decision of the assessors of New Bedford, refusing to abate any part of a tax upon its shares at a valuation of $120 per share of the par value of $100.    The Superior Court sent the case to a commissioner to report the facts, and afterwards heard the case on the report

without other evidence. It found as a fact, from the report, that for the purposes of taxation in this case the fair cash value of the shares, at which they are required to be assessed by the Pub. Sts. c. 13, § 8, was their market value as found by the commissioner, and ruled that upon the facts the assessors had no right to assess the stock upon the basis of the value as shown by the capital stock, the surplus fund, and the undivided profits, irrespective of the other evidence in the case, and that such assessment should be abated as to the excess above the fair cash value found to be the market value as first stated. This ruling was excepted to. Substantially the same point is presented another way by an exception to a refusal to rule that the assessors had a right to assess the stock upon the real worth of the property of the bank, all things considered.

The difference between the parties arises from findings by the commissioner, that, assuming that the bank was to continue its business, the fair market value of the shares on May 1, 1890, was $102 per share, but that, assuming that it was to close its business, convert its assets into cash, and divide the cash among the shareholders, the fair value of each shareholder's interest was $126 per share, from which $6 is to be deducted for real estate. The discrepancy is accounted for by a loss of confidence in the management, and the fact that for some years the bank had paid low dividends.

The main question argued before us was whether the foregoing ruling and refusal were right. There is a strong argument that the respondent was not entitled to any ruling as to what the assessors had or had not a right to do, but that the only business of the Superior Court was to determine afresh, on the facts and within the limits of its appellate action, what a fair assessment would be, and what, if any, abatement is reasonable. Pub. Sts. c. 11, §§ 69, 71. If, however, we are called on to go further, in order to see that the Superior Court did not adopt a false standard, we must notice that the court did not rule that under no circumstances would the assessors have had a right to assess on the basis mentioned, but only that it was wrong upon the facts found. One of the facts found is that in this case the fair cash value of the shares was their market value. Of course the fair cash value of stock may be its market

value, so that, putting the respondent's case at the highest, the petitioner must prevail upon the merits, unless the court was not justified in its finding of fact by the commissioner's report.

The thing of which the fair cash value is to be found is the stock or shares of the corporation. Value refers to exchange. The cash value of an article is the amount of cash for which it will exchange in fact. That amount depends on the opinion of the public of possible buyers, or of that part of it which will pay the most. If in their opinion the stock is worth only $102 per share, — if that is all that the stock will sell for, — it is vain to show that the net value of the property of the corporation, that is to say, the opinion of the public about a chief component element of the value of the stock, if uncontrolled, logically leads to a different value for the stock. It has been recognized judicially that the value of the property and the value of the stock might differ, for reasons which have been found to exist in this case. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, 302, 303. *Commonwealth* v. *Cary Improvement Co.* 98 Mass. 19, 22.

Moreover, if there seems to be a difference in the value of the stock when arrived at in the two ways under consideration, generally speaking, the effect of the value of the property of a corporation upon the value of its stock will be estimated more accurately by the interested and trained judgment of the market than it can be by a court. As a rule, the fair cash value of shares having a market is best ascertained by finding the price at which they sell in the market.

But in truth the commissioner's report discloses no difference in the value of the stock, according as it is got at one way or the other. The difference in the value found by him depends upon whether it is assumed that the corporation was to continue its business or was to be wound up. If it was to continue its business, $102 was the fair market value for a share; that is to say, $102 was the full amount of cash that could be got or ought to be got for a share in that bank, its property and prospects being what they were. The bank actually was to continue its business, therefore that was the actual fair cash value of its shares. What they would have been worth in a different state of facts, if the bank had come to a stop, does not matter.

Actual values are based upon existing states of fact, not upon hypotheses; and the actual value of shares in a going concern depends not only upon its property, but also upon its prospects, since shares both represent property and prospects.

The second proposition argued by the respondent is that the petitioner cannot recover because on October 15, 1890, after filing a written protest in due form, it paid the full tax assessed, less the discount allowed upon payments made on or before that date. A sufficient answer to this argument is that payment of the taxes for which he has been assessed is made an express condition of the granting of an abatement and the rendering of a judgment for the amount of it, by the St. of 1890, c. 127, § 3.

The last point for the respondent is that the statutory conditions of an abatement have not been complied with. The right of the bank to maintain a petition and to appeal is not denied. If it did not have that right under the Pub. Sts. c. 11, §§ 69, 71, and the St. of 1890, c. 127, probably it would have no means of revising an over valuation of shares by the assessors. The word "person" in those statutes extends to corporations. Pub. Sts. c. 3, § 3, cl. 16. See *Otis Co.* v. *Ware,* 8 Gray, 509; *Palmer* v. *McMahon,* 133 U. S. 660, 669; *Hills* v. *Exchange Bank,* 105 U. S. 319. But it is said that, in order to have an abatement, a list must have been filed under the Pub. Sts. c. 11, § 72, and it is argued that the tax is assessed upon the shareholders, that the bank is only a statutory agent for payment, and that therefore a list must be shown to have been brought in by the shareholders. But we are of opinion that the substitution of the bank for the shareholders is more thorough-going than is recognized by this argument. The bank is the person to file the list, as it is the person to pay the tax, to petition for abatement, and to take an appeal. This being so, the only list which could be required would be a list distinct from the general list of property required of the shareholders, and such as lay within the power of the bank to furnish, viz. a list of its shares, the only property of its shareholders on which the bank was to pay a tax. Again, the bank is not bound to include its own property along with that which it returns in its representative capacity. The tax is on the shares, not on the assets of the bank. U. S. Rev. Sts. § 5219. Pub. Sts. c. 13, § 8. *Van Allen*

v. *Assessors,* 3 Wall. 573, 583, 584. *Palmer* v. *McMahon,* 133 U. S. 660, 666, 667. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298. A list of this sort, showing the name of each shareholder, with his residence and the number of shares belonging to him, is required by the Pub. Sts. c. 13, § 11, to be furnished to the assessors of the city or town where the bank is located, and where, by § 8, all the shares are to be assessed. This list was furnished by the petitioner. We are of opinion that in the case of national banks this list satisfies the requirements of c. 11, § 72. A valuation of the property is not required by § 72. See § 40. *Newburyport* v. *County Commissioners,* 12 Met. 211. And the assessors to whom, by § 72, the list is to be furnished, obviously are those who are to assess the tax.

*Judgment for the petitioner.*\*

---

\* A decision was made on the same day in Bristol, in the case of

ADAMS & others *vs.* CITY OF NEW BEDFORD.

HOLMES, J. This was an appeal by the stockholders of the petitioning bank in *National Bank of Commerce* v. *New Bedford, ante,* 313, and by the terms of the report, if the petition in that case could be maintained, judgment was to be entered for the respondent for its expenses and costs.

*Judgment for the respondent.*

*C. W. Clifford,* for the petitioners.
*E. Avery & T. F. Desmond,* for the respondent.