ALFRED E. COLE, administrator, *vs.* CHANNING M. WELLS & others.

Worcester, March 31, 1916. — June 21, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Equity Pleading and Practice,* Amendment, Appeal, Plea. *Equity Jurisdiction,* Minority stockholders' bill. *Corporation,* Rights of minority stockholders, Officers and agents. *Waiver. Election. Words,* "Value of the stock."

If the plaintiff in a suit in equity appeals from an interlocutory decree sustaining a demurrer to the bill on the ground of multifariousness and afterwards by leave of court amends the bill so that the objection of multifariousness is removed, he waives his right of appeal.

If a defendant files an affirmative plea to a bill in equity and the plaintiff files no replication thereto, the facts well alleged in the plea are admitted by the plaintiff and the sole question on the plea is, whether as a matter of law, upon the facts therein well alleged and the facts well alleged in the bill and not denied in the plea, the suit can be maintained.

In St. 1903, c. 437, § 44, giving a stockholder in a corporation, who has voted against a sale by the corporation of all of its property and assets, a right, upon a demand in writing within thirty days after such vote, to receive " the value of

the stock " held by him which, if he and the corporation cannot agree thereto, shall be determined by appraisers, the words, "the value of the stock," mean not merely its market value if it is traded in by the public, but its intrinsic value, to determine which all the assets and liabilities of the corporation must be ascertained.

If the owner of twenty-three per cent of the capital stock of a corporation, having voted at a stockholders' meeting against action transferring all its property and assets and having made a demand in writing of the corporation for the value of his shares under St. 1903, c. 437, § 44, thereafter and while he is seeking to ascertain the real value of the shares discovers that the holders of the other seventy-seven per cent of the stock by conspiring together fraudulently have misappropriated to themselves large sums of money belonging to the corporation under the guise of salaries which were grossly exorbitant and greatly in excess of the fair value of the services rendered, have managed the affairs of the corporation to their personal profit and have so manipulated and falsified its books as to conceal their fraud and to obscure the true state of the corporation's assets; and if about seventeen months after making such discovery the minority stockholder agreed with the majority stockholders to submit the matter of the appraisal of the value of his shares to three men then selected and determined upon as arbitrators under the above statute, but no hearings are held before such arbitrators, the minority stockholder has not thereby elected to waive his right to maintain a suit in equity to compel an accounting and restitution by the majority stockholders.

The right given by St. 1903, c. 437, § 44, to a minority stockholder to compel a corporation, the majority of whose stockholders against his vote have voted to transfer all of its property and assets, to pay him the value of his shares, and his right, pending such payment to him, to compel an accounting by the majority stockholders who, while in control of the corporation, have misappropriated its property and manipulated and falsified its accounts so as to conceal their fraud and to make it difficult if not impossible to ascertain the true state of the corporation's assets, are not inconsistent but are concurrent.

Until such a minority stockholder has been paid the value of his shares, determined as provided by the statute, he still is a stockholder and has a right to pursue in equity his rights as such minority stockholder in behalf of the corporation against the majority stockholders to compel an accounting and restitution by them; because as a stockholder he is entitled to any enhancement in the value of his shares due to such restitution.

The scope of a bill in equity is to be determined by its allegations and not by its special prayers for relief.

If the owners of seventy-seven per cent of the capital stock of a corporation, who are its officers and are in full control of its affairs, cause a meeting of the stockholders to be called and in pursuance of a vote there taken against the vote of the owner of twenty-three per cent of the stock sell all of its property and assets to themselves to hold and manage under a trust which was not intended nor calculated by them to be in the interests of the corporation and of all of the stockholders but was deliberately planned and accomplished for the sole purpose of enabling them to acquire the property of the corporation for their own benefit and to protect and secure themselves against any attempt on the part of the corporation or of the minority stockholder to compel an accounting by them and a restoration of moneys theretofore wrongfully misappropriated by them and to enable them to carry on and enlarge the business for their sole per-

sonal advantage, such conduct is a deliberate fraud upon the corporation and the minority stockholder and he can maintain a suit in equity in his own behalf and in behalf of the corporation to set aside the transfer and to compel an accounting and restoration by the majority stockholders.

BILL IN EQUITY, filed in the Superior Court on December 24, 1914, by the administrator of the estate of Robert H. Cole, late of Southbridge, the owner of twenty-three per cent of the capital stock of the American Optical Company, a Massachusetts corporation, against the owners of the other seventy-seven per cent of the stock, who were the officers and were in full control of the corporation, and against the corporation.

The allegations of the bill, so far as material to the decision, were in substance that the individual defendants and George W. Wells, since deceased, after acquiring the full control of the affairs and business of the American Optical Company, desiring and intending to obtain for themselves a greater share of the profits of the corporation than they were rightfully entitled to as stockholders, and to induce and compel the other stockholders to sell their stock to them at much less than its fair value and ultimately to acquire all the capital stock of the corporation and to become possessed of all its business, good will and property at much less than the fair value thereof, conspired together to use their control of the corporation for the accomplishment of their purpose, and so to manage and direct its affairs as to promote their own private gain in disregard of their duties as officers and stockholders and in fraud of the rights of the corporation and of its other stockholders; that to that end they appropriated to themselves large sums out of the profits of the corporation under the guise of special salaries, which were grossly exorbitant and greatly in excess of the fair value of the services rendered therefor; that they concealed from the other stockholders the fact of such misappropriation, amended the by-laws so as to give themselves power to vote such salaries, and so kept the books that such payments did not appear as salaries and so that "it was difficult, if not impossible," to determine from the accounts of the concern the amounts so drawn; that by false entries they concealed from the other stockholders the actual profits of the corporation's business, which were very large, and the actual amount of its assets; and that in many other ways, the details of which the plaintiff was

unable to state, they took advantage of their exclusive control of the corporation to promote their own private interests at the expense of the corporation, in disregard of their duties as its officers and in fraud of the rights of the other stockholders and of the plaintiff; that, having acquired all of the capital stock excepting that owned by the plaintiff, the defendants and George W. Wells by false representations to the plaintiff sought to induce him to sell to them his shares at a price far below their real value; that, failing in their attempt, and in pursuance of their fraudulent purpose of appropriating to themselves more than their just share of the profits and assets of said corporation, they called a meeting of the stockholders on March 23, 1912, to take action with reference to selling or disposing of all the assets and business of the company; that at that meeting they voted to sell the entire assets of the corporation to themselves as trustees in exchange for certificates of common and preferred shares in the trust.

The bill alleged that the terms of the trust were a fraud upon the corporation and its stockholders and that the consideration given for the transfer was grossly inadequate in "that (1) it was based on book values which had been purposely made by the purchasers to appear far below the actual values, (2) it took no account of the large sums of money which the respondents are in equity and good conscience bound to restore to the corporation because wrongfully taken from it, (3) it took no account of the great value of the patents, trade-marks and secret processes owned by the corporation and of which no inventory or appraisal appeared upon its books, (4) it took no account of the good will and trade-name of the business which were of very great value, and (5) it substituted for the valuable assets and good will of the corporation certificates or shares in a trust which was purposely so framed as to render the said shares of little market value to anyone except the respondents themselves who as trustees have had the complete control and direction of the trust."

The bill also alleged that the individual defendants made the transfer on March 23, 1912, for the "purposes (among others) of (1) securing themselves against any attempt on the part of the corporation or its stockholders to require an accounting from them of the sums wrongfully appropriated by them as heretofore set forth, (2) obtaining an apparent ratification and acceptance by

the corporation and its stockholders of the inadequate book-values of its assets of approximately $2,100,000, (3) compelling any dissenting stockholder to accept as the value of his stock the amount it might be found to be worth upon the assumption that said nine thousand of preferred and twelve thousand of common shares in said trust fairly represented the entire assets of the concern, and (4) obtaining a more complete control over the business and assets of the concern than they could safely exercise as officers of the corporation, and so appropriating to themselves more than their just share of its profits and property;" and that after the transfer the defendants continued to make large profits from the business of the corporation and the plaintiff has received nothing as dividends.

The bill further alleged, in the twentieth paragraph, that the plaintiff at the stockholders' meeting on March 23, 1912, voted against the action of the defendants and thereafter, being unwilling to accept in place of his stock his proportionate part of the shares in the trust to be received by the corporation in payment for its property and business, he, within thirty days after the date of the meeting, made a demand in writing upon the corporation for payment for his stock, in accordance with the provisions of St. 1903, c. 437, § 44. In negotiating thereafter with the individual defendants as officers of the corporation for the purpose of fixing the value of his stock, the plaintiff was so dissatisfied with the value thereof as represented to him by them, that he employed an expert accountant to go over the books of the corporation and report to him the data required for forming an intelligent estimate of the value. He received the first preliminary report of the accountant on January 8, 1913, and his final report September 30, 1913.

The bill further alleged that not until April 11, 1913, did the plaintiff become aware of the fraudulent acts and conspiracies above described, and that, because of the way in which the books of the corporation had been kept and the business had been conducted, he ever since had been and still was unable to get a full statement of the value of the property and assets of the corporation as they stood at the date of the transfer to the trustees although he had at all times diligently sought to do so; and that, after he became aware of the facts which he had alleged, he sought unsuccessfully to get the corporation to avail itself of its rights in

the premises but was unsuccessful because the individual defendants were in complete control of the corporation.

In the twenty-fourth paragraph of the bill the plaintiff alleged that he had "become entitled, under the provisions of St. 1903, c. 437, §44, to have the value of his stock determined either by agreement with the corporation or by a board of appraisers. But because of the wrongful acts of the defendants above set forth it is impossible to reach a just or accurate appraisal of said stock until the accounting prayed for in this bill is had, so that the true value of the assets of the corporation, and so the true value of said stock, may be justly determined."

The prayers of the bill were for a restoration to the corporation of the money improperly appropriated by the individual defendants under the guise of salaries and for an accounting by them of private benefits improperly received either individually or as trustees; that the full value of all the property, assets and business of the corporation taken over by the defendants as trustees, "including all patents, patent rights, secret processes, trade-marks, trade-names, good will and going concern values," be ascertained and determined, and that they be ordered to account to the corporation for the amount thereof; and, in the fifth prayer, that the defendants be ordered to pay to the plaintiff in exchange for his stock his proportionate part of the amount determined upon as the value of the property, assets and business of the corporation.

The defendants demurred, alleging eleven grounds of demurrer. The demurrer was heard by *Morton*, J., and an interlocutory decree was entered which sustained the demurrer upon the eleventh ground, which alleged that the bill was multifarious in that it combined two unrelated causes of action founded upon distinct rights, the plaintiff in the same bill claiming as a minority stockholder a right to enforce against the individual defendants an alleged cause of action in behalf of the corporation, and also claiming a right as a creditor to enforce his alleged rights under St. 1903, c. 437, §44, and under his demand to receive a proportionate part of the value of all the assets of said corporation. On all other grounds the demurrer was overruled. Both parties appealed from the decree.

The plaintiff then amended the bill, striking out the twentieth

and twenty-fourth paragraphs of the bill and the fifth prayer, and substituting a new twentieth paragraph alleging that at the meeting of the stockholders of the corporation on March 23, 1912, the plaintiff voted against the action then taken; that thereafter he had certain negotiations with the individual defendants as officers of that corporation for the purpose of ascertaining the value of the property and assets, and, being dissatisfied with the information he was able to obtain from them, he employed expert accountants to go over the books of the corporation and obtain the data required for forming an intelligent estimate of said value, and that he received the first preliminary report of the said accountant on January 8, 1913, and his final report September 30, 1913. The bill further was amended by adding the administrator of the estate of George W. Wells as a defendant.

The defendants filed a plea to the bill, alleging the negative vote of the plaintiff's stock at the corporation meeting of March 23, 1912, and his demand under the statute to be paid the full value of his stock, and continuing as follows:

"On or about October 1, 1914, the defendant corporation, at the request of the plaintiff who was then fully informed and advised regarding all the facts of which he complains in his bill and in consideration of the mutual promises then exchanged between the defendant corporation and the plaintiff, that they would submit the plaintiff's claim, including all claims of the plaintiff with respect to excessive salaries drawn by the defendants and George W. Wells, to arbitration, then and there agreed to arbitrate said claim as by Section 44 of said Chapter 437 of the Acts of 1903, and the defendant corporation and the plaintiff, on or about the date last above named, agreed upon James R. Dunbar of Boston, Alonzo R. Weed of Newton, and Daniel G. Wing of Boston, three disinterested persons to ascertain the value of such stock as provided by said chapter, and mutually agreed upon the compensation to be paid said disinterested persons, and further agreed to submit the claim of the plaintiff upon the defendant corporation for the value of his stock, together with all facts that might be material or important to said arbitrators during the week beginning October 28, 1914. The defendant corporation has at all times been ready and willing and has offered to submit the plaintiff's claim to the decision of said arbitrators and to abide by their

appraisal and to pay their award within thirty days after the same was made and has offered and attempted and endeavored to submit the same, but the plaintiff has wholly refused and neglected and still refuses and neglects to carry out said agreement to arbitrate."

The defendants also, without waiving their plea, demurred to the bill as amended for want of equity, for laches, because the plaintiff had an adequate remedy at law, and because the bill showed that the plaintiff at his own election ceased to be a stockholder and became a creditor.

There was no replication to the plea and it and the demurrers were heard by *Morton*, J., by whose order an interlocutory decree was entered adjudging the plea insufficient in law and overruling the demurrers, from which the defendants appealed. Thereafter the judge, being of the opinion that the orders and decrees appealed from so affected the merits of the controversy that the matters involved therein ought, before further proceedings, to be determined by this court, reported the case for that purpose.

*G. L. Mayberry,* (*E. H. Vaughan & J. C. F. Wheelock* with him,) for the plaintiff.

*C. F. Choate, Jr.,* (*J. Garfield* with him,) for the defendants.

BRALEY, J. The bill, as originally framed, charged the defendants as directors with having wrongfully appropriated funds of the corporation to a large amount for their own personal benefit, and also that at a meeting of the stockholders, duly called to take action on a plan proposed by the directors to transfer all the assets of the corporation to themselves as trustees to hold under the declaration of trust, a copy of which is annexed to the bill, the plaintiff representing a minority of the capital stock, having voted against the transfer, thereafter made a demand in writing upon the corporation in accordance with the provisions of the St. 1903, c. 437, §§ 3, 44, which read as follows: "A stockholder in any corporation which shall have duly voted to sell, lease or exchange all its property and assets or to change the nature of its business in accordance with the provisions of section forty, who, at the meeting of stockholders, has voted against such action may, within thirty days after the date of said meeting, make a demand in writing upon the corporation for payment for his stock. If the

corporation and the stockholder cannot agree upon the value of the stock at the date of such sale, lease, exchange or change, such value shall be ascertained by three disinterested persons, one of whom shall be named by the stockholder, another by the corporation and the third by the two thus chosen. The finding of the appraisers shall be final, and if their award is not paid by the corporation within thirty days after it is made, it may be recovered by the stockholder from the corporation in an action of contract. Upon payment by the corporation to the stockholder of the agreed or awarded price of his stock, the stockholder shall forthwith transfer and assign the stock certificates held by him at, and in accordance with, the request of the corporation."

But, having as he further alleges made the demand before he had any knowledge of the misappropriation by and fraudulent management of the directors, he also sought to maintain the suit as a minority stockholder.

The defendants having demurred, the demurrer was sustained on the sole ground of multifariousness. While the plaintiff appealed from the interlocutory decree, he subsequently amended by striking out the twenty-fourth and modifying the twentieth paragraphs relating to the demand for an appraisal and omitting the corresponding prayer for relief. By the allowance of this amendment he waived his appeal. It related back to the filing of the bill, and the amended bill became the original bill. *Hurd* v. *Everett*, 1 Paige, 124.

The defendants, however, demurred to the amended bill and also filed a plea. We first consider the plea. It is a pure or affirmative plea, relating only to proceedings to be taken by a dissenting stockholder under the St. of 1903, c. 437, § 44, and states matters not apparent on the face of the bill as amended. Story, Eq. Pl. (8th ed.) § 660. The object being to defeat the bill without resort to a general answer, and the plaintiff not having filed a replication, the facts stated in the plea are admitted, but their sufficiency as matter of law to bar recovery is denied. *Farley* v. *Kittson*, 120 U. S. 303.

A minority stockholder, if he votes against the action taken by the corporation, is entitled under the statute to "payment for his stock." If the corporation and the stockholder cannot agree, the value is to be ascertained by disinterested arbitrators. It is obvious

that "the value of the stock" means not merely the market price if the stock is traded in by the public, but the intrinsic value, to determine which all the assets and liabilities must be ascertained. The stockholder as well as the arbitrators, if arbitrators are appointed, ordinarily must resort to the books of the corporation for information, although a condition of affairs may exist where the books of themselves would fail to exhibit the true financial condition of corporate affairs.

It is specifically alleged in the bill that the directors holding nearly four fifths of the capital stock, while the plaintiff held the remaining shares, in violation of the by-laws voted themselves salaries "grossly exorbitant and greatly in excess of the fair value of the services they rendered" and that not only were such misappropriations concealed from the stockholders including the plaintiff, but being in complete control of the corporation, they managed its affairs for their own personal profit, and the books of the company were so manipulated and falsified, that, it was "difficult, if not impossible, to determine from the accounts of the concern the amounts so drawn" or appropriated.

A further and important allegation appears, that "because of such acts of concealment your complainant did not know what the profits of the company were, and was totally ignorant of the fact that these enormous salaries had been taken from the profits of the concern, and remained in ignorance thereof until some time after the attempted sale," meaning the transfer under the declaration of trust.

And these allegations not being contradicted by the plea are admitted to be true. *French* v. *Shotwell*, 5 Johns. Ch. 555. 10 R. C. L. Equity, § 223. The statutory option given to a dissatisfied stockholder is either to acquiesce or to accept the fair value of his stock and retire from the corporation. If he retires the valuation on which payment is to be made is not what the majority stockholders may be willing the corporation should pay, but is to be ascertained as if liquidation had been voted and all the corporate property after the payment of debts had been marshalled for the benefit of all the stockholders. It is plain that the defendants through their control of the corporation cannot compel the plaintiff, who was ignorant of their misdoings, to accept payment for his stock upon a valuation of the assets which excludes

the amounts misappropriated. A demand under such circumstances cannot be held to have the force and effect of the demand contemplated by the statute, and there was no irrevocable election, as the defendants contend, to receive payment upon a valuation to be fixed by agreement of parties, or by arbitration, whereby all demands for an accounting or proceedings to set aside the transfer as violative of his just rights as a dissenting or minority stockholder were waived.

The right moreover to demand payment and the right to seek relief in equity in aid of the demand are not inconsistent but concurrent, and under such circumstances there is no necessity for an election. *Mason* v. *Mason*, 4 Sandf. Ch. 623, 632. *Barnett* v. *Philadelphia Market Co.* 218 Penn. St. 649. *Winfree* v. *Riverside Cotton Mills*, 113 Va. 717, 724.

But even if the plaintiff could be deemed to have elected, he remained a stockholder until payment by the corporation for his stock at the agreed or awarded price, with the right if necessary to maintain a minority stockholder's bill for an accounting and the restoration to the corporation of the unlawful gains and profits obtained by the defendants while acting in a fiduciary capacity. The enhancement of assets from this source manifestly would result in the enhancement of the price or value of his stock. *Douglass* v. *Concord & Montreal Railroad*, 72 N. H. 26. *Barnett* v. *Philadelphia Market Co.* 218 Penn. St. 649. *Colgate* v. *United States Leather Co.* 3 Buch. 72, 98. *Winfree* v. *Riverside Cotton Mills*, 113 Va. 717, 724. *Mason* v. *Pewabic Mining Co.* 133 U. S. 50. *In re Imperial Bank of China, India, & Japan*, L. R. 1 Ch. 339, 347. *In re Consolidated South Rand Mines Deep, Ltd.* [1909] 1 Ch. 491. Thompson, Corp. (2d ed.) § 6060.

The defendants by their demurrer admit all the material allegations which are well pleaded, and the scope of the bill is to be ascertained from its frame and not by the special prayers for relief. *Fordyce* v. *Dillaway*, 212 Mass. 404, 411. It is settled that the amended bill can be maintained to compel the defendants to make restitution of all moneys misappropriated and for which they were jointly and severally liable to the corporation at the date of transfer. *Von Arnim* v. *American Tube Works*, 188 Mass. 515. *United Zinc Companies* v. *Harwood*, 216 Mass. 474, 476, 477, and cases cited.

But if the grounds of demurrer, that the bill does not state a case for equitable relief and that, the option given by statute to a dissentient stockholder being exclusive, the remedy at law therefore is plain and adequate, are not well taken for reasons sufficiently stated, and the bill on its face fails to show such delay as to preclude the plaintiff, the demurrants further urge that he cannot maintain the bill to set aside the transfer. *Manning* v. *Mulrey,* 192 Mass. 547. *Daly* v. *Foss,* 199 Mass. 104. *Douglass* v. *Concord & Montreal Railroad,* 72 N. H. 26, 31.

The bill alleges that the defendants, having acquired virtual ownership and control of all the stock of the corporation excepting the small percentage owned by the plaintiff, caused a meeting of the stockholders to be called to take action with reference to selling or disposing of all the assets and business of the company, and the vote thereupon passed that the company sell all its property and assets including its good will to the defendants to hold and manage under the declaration of trust was not intended to be a transaction in the interests of the corporation and the stockholders, but was deliberately planned and accomplished for the sole purpose of enabling the defendants to acquire for their own benefit the property of the corporation, and to protect and secure themselves against any attempt on the part of the corporation or of the plaintiff to seek and compel an accounting of the moneys theretofore wrongfully appropriated, and to enable them to enlarge and carry on the business beyond the chartered powers of the company solely for their own personal advantage, as well as to retain under the guise of a trust with certificates of preferred and common stock a greater share of the profits than they would have obtained if the transfer had not been made. A transaction of this character, promoted and consummated by the directors who were also the majority stockholders, was a deliberate fraud upon the corporation and the plaintiff. The vote and transfer cannot bar the right of a dissentient stockholder, who has no remedy within the corporation because the wrongdoers are in full control, from maintaining a bill in equity in its behalf to have the transfer set aside and for an accounting. The property and profits when recovered constitute assets of the corporation. *Brewer* v. *Boston Theatre,* 104 Mass. 378. *Greenfield Savings Bank* v. *Simons,* 133 Mass. 415. *Warren* v. *Para Rubber Shoe Co.* 166 Mass. 97. *Von*

*Arnim* v. *American Tube Works,* 188 Mass. 515. *United Zinc Co.* v. *Harwood,* 216 Mass. 474, 476. *Smith* v. *Bank of Victoria,* 41 L. J. P. C. 34. 7 R. C. L. Corporations, §§ 287, 609.

The result is that the interlocutory decrees overruling the demurrer to the original bill on all grounds except for multifariousness, and the demurrer to the amended bill, and adjudging the plea to be insufficient in law, from which the defendants' appealed, are affirmed.

*Ordered accordingly.*