Campbell, Chief Justice,
delivered the opinion of the court:
The Metropolitan Life Insurance Company, a mutual life insurance company, sues to recover taxes it was required to pay and which the Commissioner of Internal Kevenue refused to refund for the taxable years 1919, 1920, and 1922.
By section 1000 of the revenue act of 1918, 40. Stat. 1126, there was imposed on every domestic corporation annually,
“ a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock, the surplus and undivided profits shall be included.”
*161 “(C) * * * The taxes imposed by this section shall apply to mutual insurance companies, and in the case of every such domestic company the tax shall be equivalent to $1 for each $1,000 of the excess over $5,000 of the sum of its surplus or contingent reserves maintained for the general use. of the business and any reserves the .net additions to which are included in net income under the provisions of Title II as of the close of the preceding accounting period used by such company for purposes of making its income-tax return.”
The issue involved is thus stated in behalf of the insurance company:
The method of determining the market value of these securities, which must be ascertained for the purpose of determining the amount of the company’s surplus and reserve subject to this tax, is the only question .at issue in this case.
For the defendant the issue is stated to be whether the ■company’s stocks and bonds for capital-stock tax purposes under the act “ shall be valued at the actual market values or at fair market values.” Another feature is presented by the Government to be adverted to later.
The law as it was prior to this revenue act of 1918 had not provided a measure for the tax if applied to mutual insurance companies, but this act remedies the situation by section 1000, declaring in terms that the taxes imposed shall apply "to mutual insurance companies, but it was necessary not •only to declare the measure of the tax, but also to define, in •case of these mutual companies, the character of property upon which the tax was imposed. In the case of a capital-stock company the tax was imposed “ on the fair average value of its capital stock for the preceding year ending June .30.” This would be .inapplicable to a mutual company having no capital stock, and therefore the tax is imposed on designated surplus and reserves “ as of the close of the preceding accounting period.” In the one case the fair “ average ” value of the stock is to be ascertained and in the other ■case the value of its surplus and certain reserves as stated in the act is to be found. Another difference is noted in that the fa.ir average value of the stock is to be ascertained for the preceding year ending June 30, while in the case of a mutual company the value shall be ascertained “ as of the *162 close ” of a stated period, in this case December 31. These distinctions must be observed because the law-making power has made them in a new statute “ supplanting and changing the former statutes in many respects,” and in which there is a significant change of phraseology. Hecht v. Malley, 265 U. S. 144, 156; Ray Copper Co. case, 268 U. S. 373, 376. In the latter case the commissioner was called upon to find the fair average value of the capital stock, and the court said (p. 377) : “As the method to be pursued in ascertaining the value is not prescribed, we think that it was left to the sound judgment and discretion of the commissioner, subject only to the obligation to take ,into consideration every relevant fact.” In the instant case the tax is upon “ the sum ” of the company’s surplus or contingent reserves maintained for the general use of the business and certain, other- reserves, as of December 31 of a given year. In arriving at his values the commissioner adopted as a basis what is known as convention values. These were obtained from publications by the National Convention of Insurance Commissioners entitled “ List of securities held by insurance companies,” with valuations to be used in the companies’ annual statements as of December 31. The findings show that the values as recited in the publication were to be prepared for 1917 by adding together the market values as of November 1, 1916, and February 1, May 1, August 1, and November 1, 1917, and dividing them by five. The convention values for 1918, it was stated, were to be prepared by adding to the values ascertained for 1917, the actual market values as of November 30, 1918, and dividing this sum by two. And the convention values for 1920 were determined by taking the values set forth in its last publication, adding thereto the market values as of November 1, 1920, and dividing this sum by two. This method, it is conceivable, could ascertain the average value of the securities over a definite period, and if the duty be confined to “ the fair average value ” relating to companies haying capital stock, and the commissioner in his discretion used that method, a different question would be presented from that here involved. For some reason satisfactory to them, the Congress made a distinction between the two and required an ascertainment, in a class of cases, of the *163 sum of a surplus and certain reserves “ as of the close ” of a definite period.
To adopt a means that will not reflect this sum is to ignore the statute itself. In the publication used by the commissioner its authors expressly warned the general public against its use as a guide for investors, and manifestly the action of this National Convention of Insurance Commissioners, composed of insurance supervising officials of the several States, should not be of controlling effect. On the other hand, the insurance company complaining of the valuations adopted as stated has had recourse to prices reported and carried in a publication known as the Commercial and Financial Chronicle, current on or about December 31. According to the findings this publication is an accepted market report of sales and of bid and asked prices on stocks and bonds dealt in on the New York and other stock exchanges and dealt in “ over the counter.” It may be conceded that the commissioner in the exercise of “ sound judgment and discretion ” may have resorted to some other proof of value than this publication, but in the absence of some other applicable proof he may not disregard the only proof offered that was adapted to an ascertainment of the necessary, facts. There was an obligation on him to take into consideration every relevant fact. Ray Copper Co. case, supra.
We are not impressed with the attempted distinction between “ actual ” market values and “ fair ” market values. We think that when the market value of the securities at the stated time is found, that amount reflects value for tax purposes. It has been said that as a rule the fair cash value of shares having a market is best ascertained by finding the price at which they sell in the market. See National Bank of Commerce v. City of New Bedford, 155 Mass. 313, 315; S. C. 175 Mass. 257; Mayor, etc., Newark v. Tunis, 81 N. J. Law 45. “ This is the case, for, eliminating exceptional and extraordinary conditions, giving an abnormal value for the moment to stock, it is apparent that the general market value of stock is its true cash and selling value.” San Francisco National Bank v. Dodge, 197 U. S. 70, 79. *164 We are not dealing with the case of a “ fair average value of its capital stock ” because the plaintiff has no capital stock. Its potentiality to profit by the exercise of its corporate franchise (Ray Copper Co., supra) does not affect the value of the securities held by it in other concerns, however much it would affect its own capital stock, if it had any. Under the evidence adduced the insurance company was entitled to a refund. This conclusion is not affected by the Government’s contention that the commissioner’s values must be “ accepted in their entirety or rejected in their entirety.” To the extent they are not shown to be erroneous they should stand, but to the extent they are shown to be incorrect and erroneous they should'not stand. The failure of the taxpayer to attack some items will not defeat his right to recover for taxes erroneously or illegally assessed and collected.
The plaintiff should have judgment. And it is so ordered.
Moss, Judge; Gkaham, Judge; and Booth, Judge, concur.