CHARLES J. MARTIGNETTE & others *vs.* SAGAMORE MANU-FACTURING COMPANY & others.

Suffolk. October 7, 1959. — December 17, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Corporation,* Consolidation of corporations, Stockholder. *Appraisal. Value. Interest. Words,* "Value."

Although G. L. c. 156, § 46, provides that the finding of appraisers appointed thereunder to ascertain the value of corporate stock shall be "final," the finding is subject to review for error of law. [138]

In a suit in equity by a minority stockholder of a corporation, who voted against its consolidation with other corporations, to enforce payment for his stock by the consolidated corporation at the value thereof found by appraisers under G. L. c. 156, § 46, the appraisers' finding, that the value of the plaintiff's stock, not listed on any stock exchange but sold over the counter, was a stated amount per share considerably higher than the prices received on over the counter sales, did not appear to be erroneous on evidence presented to the appraisers including, besides the over the counter sales prices, balance sheets, profit and loss statements, the dividend record, and other items indicative of the worth of the corporation. [140]

In an appraisal under G. L. c. 156, § 46, of the value of corporate stock not listed on any exchange but sold over the counter, the appraisers were not confined to a consideration of over the counter sales but might also consider any other relevant evidence. [140]

Under G. L. c. 156, § 46, a finding by "three disinterested persons" appointed appraisers to ascertain the value of corporate stock need not be unanimous, but is sufficient if made by a majority of them. [143]

Interest on the value of corporate stock payable to the stockholder upon an appraisal of value under G. L. c. 156, § 46, is payable only from the thirtieth day after the date of the appraisers' finding. [143]

BILL IN EQUITY, filed in the Superior Court on February 14, 1958.

The defendant Sagamore Manufacturing Company appealed from a final decree entered by *Quirico, J.*

*James D. St. Clair, (Earle C. Cooley* with him,) for the defendant Sagamore Manufacturing Company.

*Edward J. Flavin, (David J. Cohen* with him,) for the plaintiffs.

WHITTEMORE, J. The plaintiffs, having voted their 564 shares of the common stock against the proposal, effective August 10, 1956, to consolidate their corporation with two other corporations, made demand upon the consolidated corporation, the defendant (Sagamore), within the statutory thirty day period (G. L. c. 156, § 46E) for payment for their shares. Failing agreement on the value, the plaintiffs and Sagamore each appointed an appraiser as the statute provides (G. L. c. 156, § 46E, by reference to § 46[1]). The two appraisers could not agree on a third and the plaintiffs brought this bill of complaint for the appointment of an appraiser, and to require payment of the awards with interest from the date of consolidation. The court appointed the third appraiser and the parties stipulated that this was to

---

[1] General Laws c. 156, § 46, as amended by St. 1943, c. 38, § 2, provides in part: ". . . If the corporation and the stockholder cannot agree upon the value of the stock at the date of such sale, lease, exchange or change, such value shall be ascertained by three disinterested persons, one of whom shall be named by the stockholder, another by the corporation and the third by the two thus chosen. The finding of the appraisers shall be final, and if their award is not paid by the corporation within thirty days after it is made, it may be recovered in contract by the stockholder from the corporation. Upon payment by the corporation to the stockholder of the agreed or awarded price of his stock, the stockholder shall forthwith transfer and assign the stock certificates held by him at, and in accordance with, the request of the corporation. The word 'sell' as used in this section shall not include mortgage or pledge."

have the same legal effect as though he had been named by the other two.

On September 22, 1958, a majority of the appraisers reported to the parties their finding that the value of the common stock on August 10, 1956, within the meaning of the statute, was $145 per share. The nominee of Sagamore dissented. There followed in the Superior Court a hearing pursuant to an order to "find what determination was made by a majority of the appraisers . . . and take whatever further action is required." The judge filed "Findings and Order for Final Decree" which set out, inter alia, the facts stated in this opinion. The final decree ordered Sagamore to pay to the plaintiffs for their shares total sums computed at $145 per share with interest at six per cent a year from September 10, 1956, and that each plaintiff upon receiving the payment forthwith transfer and assign his stock certificate to Sagamore. This is Sagamore's appeal from the final decree. Sagamore contends that the decree errs in confirming an award bad in law because it exceeded the shown market value of the shares and because not made by all the arbitrators, and also errs in the award of interest.

. 1. The findings of the appraisers, though "final" (G. L. c. 156, § 46), are subject to review for error of law. This is not a case where parties have agreed that there shall be paid whatever others determine shall be paid (see *New England Trust Co.* v. *Abbott,* 162 Mass. 148, 153; *Krauss* v. *Kuechler,* 300 Mass. 346, 349; *Eliot* v. *Coulter,* 322 Mass. 86, 89–90, and cases cited; *Jordan Marsh Co.* v. *Beth Israel Hosp. Assn.* 331 Mass. 177, 185–186; *Lewis* v. *H. P. Hood & Sons, Inc.* 331 Mass. 670), or to be bound by the award of arbitrators. See *Baldwin* v. *Moses,* 319 Mass. 401, 402; *Phaneuf* v. *Corey,* 190 Mass. 237, 247. The statute requires a transfer of property and a payment, not of whatever sum the appraisers say, but of the "value of the stock" as ascertained by them. It is implicit that the parties will respectively have to pay and to receive what the statute means by "value," as determined by the appraisers in their honest judgment. If it is shown that the appraisers have not so

acted as to give them this, their findings are not enforceable. See, as to review of error in the findings or determinations of administrative or executive officers or boards, whose findings are, by statute, final, *McLaughlin* v. *Mayor of Cambridge,* 253 Mass. 193, 199–200; *Pacific Mills* v. *Director of the Div. of Employment Security,* 322 Mass. 345, 346; *Moen* v. *Director of the Div. of Employment Security,* 324 Mass. 246, 247. See also *Santa Fe Pac. R.R.* v. *Fall,* 259 U. S. 197; *Silberschein* v. *United States,* 266 U. S. 221, 225; *United States* v. *Williams,* 278 U. S. 255, 257–258; *Dickinson* v. *United States,* 346 U. S. 389, 394.

We need not now determine to what extent the procedure must be such as to present questions of law, there being no statutory or other express rules governing the appraisal. Here evidence of what the appraisers did was received under an interlocutory decree to which no exception was taken.

It is to be expected that, in jurisdictions where the court appoints the appraisers, questions of law will be reviewed. See *Chicago Corp.* v. *Munds,* 20 Del. Ch. 142; *Republic Fin. & Inv. Co.* v. *Fenstermaker,* 211 Ind. 251, 252; *American Gen. Corp.* v. *Camp,* 171 Md. 629; *Wall* v. *Parrot Silver & Copper Co.* 244 U. S. 407 (Montana statute); *Prall* v. *United States Leather Co.* 6 N. J. Misc. 967, affd. 105 N. J. L. 646; *Matter of Bickerton,* 232 N. Y. 1; *Roessler* v. *Security Sav. & Loan Co.* 147 Ohio St. 480; *Adams* v. *United States Distrib. Corp.* 184 Va. 134. So also in States where the court determines the value. See *Fenderson* v. *Franklin Light & Power Co.* 120 Maine, 231; *Johnson* v. *Brigham Co.* 126 Maine, 108; *Ahlenius* v. *Bunn & Humphreys,* 358 Ill. 155, 165–166; N. Y. Consol. Laws, c. 59, § 87, by reference to § 21 (court in New York now determines value *or* appoints an appraiser).

The issue was raised in New York when the statute (N. Y. Consol. Laws, c. 59, § 17) provided for application to the Supreme Court for the appointment of three appraisers and that "they or any two of them, after being duly sworn . . . shall estimate and certify the value of such stock . . . . When the corporation shall have paid

the amount of such appraisal, as directed by the court, such stockholder shall cease to have any interest in such stock . . . ." *Matter of Bickerton*, 232 N. Y. 1, 6–10, held that the court had the incidental power and the duty to examine the proceedings and that the appraisers were obliged to proceed on competent evidence and preserve a record. Contrast *Hanley* v. *Aetna Ins. Co.* 215 Mass. 425, 430; *Eliot* v. *Coulter*, 322 Mass. 86, 89–90.

2. It does not appear that there was error in the finding that the value was $145 per share.

We pass the point that the findings show that there was evidence before the appraisers not shown to the court which conceivably could have controlled the result. The judge after stating evidence which the appraisers considered found that they "also heard counsel for the plaintiffs and for the corporation, at which hearing arguments were heard and additional material and data was furnished the appraisers by the parties . . . [which the] appraisers considered . . . in determining the value."

Turning to the evidence in the record, we note that the appraisers had evidence of over the counter sales of 648 shares of the stock from February 13, 1956, to August 10, 1956, at prices per share from $100 to $119. The stock was not listed on any exchange. There were 28,295 outstanding shares. The appraisers also had balance sheets, profit and loss statements, the dividend record, a breakdown of the inventory, and statements of the market value of the corporation's securities, uncollected receivables, a five year record of machinery purchases and sales, fire insurance in force, and insurance appraisals.

The appraisers rightly did not confine themselves to the evidence of over the counter sales. This court in 1916 in *Cole* v. *Wells*, 224 Mass. 504, 512–513, in construing the statute said, "It is obvious that 'the value of the stock' means not merely the market price if the stock is traded in by the public, but the intrinsic value, to determine which all the assets and liabilities must be ascertained." Although it is true, as Sagamore says, that this ruling was not neces-

sary to the decision and was said in respect of stock not shown to have had a market, we think the rule should not be recast in terms of market value.

Courts elsewhere, under statutes which specify "value" or "fair value" or "fair cash value" (32 Col. L. Rev. 60, 67), reject the confining connotations of "market" and state broad rules. *Chicago Corp.* v. *Munds,* 20 Del. Ch. 142, 153–154 (1934). *Tri-Continental Corp.* v. *Battye,* 31 Del. Ch. 523. *Ahlenius* v. *Bunn & Humphreys,* 358 Ill. 155, 167 (1934). *Republic Fin. & Inv. Co.* v. *Fenstermaker,* 211 Ind. 251. *American Gen. Corp.* v. *Camp,* 171 Md. 629, 637. *Matter of Fulton,* 257 N. Y. 487, 493–495. *Matter of Marcus,* 273 App. Div. (N. Y.) 725. *Matter of Silverman,* 282 App. Div. (N. Y.) 252 (1953). *Roessler* v. *Security Sav. & Loan Co.* 147 Ohio St. 480, 482–483 (1947). *Adams* v. *United States Distrib. Corp.* 184 Va. 134, 146. 32 Col. L. Rev. 60, 66 et seq. 45 Harv. L. Rev. 233, 258 et seq. 47 Harv. L. Rev. 847, 851 ("market price" measure is "rarely recognized"). See *Robbins* v. *Beatty,* 246 Iowa, 80, 91 (1954). Compare *Prall* v. *United States Leather Co.* 6 N. J. Misc. 967, affd. 105 N. J. L. 646 (statute reading "market value").

*Cole* v. *Wells, supra,* brings forward the distinction between "market price" and "value." Because under ideal conditions market price will reflect all valuable aspects of property, the common statement of the rule is in terms of market value. Conditions may be such, however, that market price will not adequately show value and other evidence is required. *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 517–518. See *McAnarney* v. *Newark Fire Ins. Co.* 247 N. Y. 176, 181–183. In speaking of "fair market value" in such cases, as a concept which may reflect more than market price, we place emphasis on the *hypothetical* willing buyer and seller and the *assumed* free and open market. See *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 193–197. The statement of the rule for appraising stock on merger in terms of "intrinsic value" affirms that in all merger cases market price is not the only measure, so that, as a matter of

course, other evidence will be relevant. That is, these would all be special cases if we applied the usual "fair market value" measure. Suggested justification for the widespread exception to the usual, "administratively expedient" rule (32 Col. L. Rev. 60, 73–74) includes the possible effect of the merger to cause market fluctuations, the interest of many stockholders in yield rather than market (*ibid.*), and the uniqueness of the properties and prospects of any corporation. *Chicago Corp.* v. *Munds*, 20 Del. Ch. 142, 153–154. The special classification which the rule creates is now well established, is not unreasonable, and should not be abolished.

The rule does not mean that prices, in an established market in normal times, of a widely held stock bought for investment by well informed persons will not be entitled to "considerable weight." See 47 Harv. L. Rev. 847, 852, and New York cases, this point, *supra*. The rule does mean that even if such a market is shown other evidence is relevant and that it is for the appraisers in the particular case to determine the weight of the relevant factors. We note incidentally that the findings show no such market in Sagamore stock.

It is not inconsistent with the foregoing that statutory specification of "true market value" in a tax statute results in emphasis on "exchange value" and "the actual judgment of the public." *Commissioner of Corps. & Taxn.* v. *Boston Edison Co.* 310 Mass. 674, 688–690. *National Bank of Commerce* v. *New Bedford*, 155 Mass. 313. *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257, 262.

We agree with the observations (*Chicago Corp.* v. *Munds*, 20 Del. Ch. 142, 148, 153; 32 Col. L. Rev. 60, 77; 47 Harv. L. Rev. 847, 849) that *Cole* v. *Wells*, 224 Mass. 504, 513, in stating that "valuation . . . is to be ascertained as if liquidation had been voted" is too restricted. See *National Bank of Commerce* v. *New Bedford*, 155 Mass. 313, 315. Where the corporation is not insolvent or without significant earning prospects (47 Harv. L. Rev. 847, 848) the earnings and worth of the corporation as a going concern are impor-

tant. *Matter of Fulton*, 257 N. Y. 487, 495, *supra*. *Chicago Corp.* v. *Munds*, 20 Del. Ch. 142, 148, 153, *supra*.

3. The statute does not require a unanimous finding. The function of the third appraiser is more than to attempt to get the nominees of the parties to agree. The statute is designed to set up workable machinery. It should be so construed as to be "an effectual piece of legislation." *Commonwealth* v. *Slome*, 321 Mass. 713, 716. Notwithstanding the requirement that the appraisers be "three disinterested persons" we think that in many if not most cases the nominee of a party will tend to weigh the evidence from the point of view of that party so that unanimity will be difficult to attain. The early concept that the power given to arbitrators is joint so that they must all concur is inapplicable. Compare *Towne* v. *Jaquith*, 6 Mass. 46; *Washburn* v. *White*, 197 Mass. 540. The reasonable implication of the statute controls. See *Sukonik* v. *Shapiro*, 333 Pa. 289, 292; *Rosenbaum* v. *Drucker*, 346 Pa. 434.

4. Interest is payable only from the thirtieth day after the date of the appraisers' finding, that is, from October 22, 1958.

The statute contemplates that the dissenters will remain stockholders until the finding is made ("the stockholder shall forthwith transfer and assign the stock certificates held by him") and directs that if the award is not paid within the thirty day period "it may be recovered in contract by the stockholder from the corporation." Perhaps it may be difficult to determine in some cases what are the stockholders' rights as such in the period intervening between demand and award. Some more recent statutes make provision for these rights or for interest from an earlier date. See 45 Harv. L. Rev. 233, 251 et seq. But under our statute we see no basis for holding that the right to interest accrues to the stockholder before the corporation acquires the right to and is bound to take the stock. *Cole* v. *Wells*, 224 Mass. 504, 514. *Matter of Erlanger*, 237 N. Y. 159, 166. *Bank of Brighton* v. *Smith*, 12 Allen, 243, 252. Compare *County Commrs. of Bristol, petitioners*, 193 Mass. 257, 261–262, and cases cited.

We think it is appropriate to examine the interest point even though the judge found that "the sole issue" was that of market value.

5. The decree is to be modified in respect of interest in accordance with this opinion and, as modified, is affirmed.

*So ordered.*